CONNALLEŸ, Appellant, *v.* SYLVESTER F. PECK, ROBERT M'DOWELL, JOHN A. PECK, JAMES B. M'DOWELL, ROBERT MILLS, DAVID G. MILLS, and JOHN M'NISH, Respondents.

Where the proof does not sustain the allegations of the bill, and where by the proof, the complainant would be entitled to relief, in a court of equity, if his pleadings had been properly framed ; an amendment should be allowed or directed, to conform the pleadings to the facts which ought to be in issue, in order to enable the court to decree fully on the merits ; and whenever this is not done it is error.

APPEAL from the Fifth Judicial District, San Joaquin County. The complaint sets forth that the plaintiff obtained judgment in the District Court against defendant, on the 3d February, 1851, for $3921, with interest at eight per cent. per month, which was duly recorded, February 6th, 1851. That he issued several executions thereon without effect, and on the 13th September, issued an alias execution to the sheriff of San Joaquin County, who levied on a lot in the city of Stockton, of which the plaintiff became the purchaser, at sheriff's sale, on the 9th October, 1850, and holds the sheriff's deed for the same. Which lot plaintiff further shows, was, on the      day of      1850, purchased by Sylvester F. Peck, for $4500, from one Charles Weber, when the greater part of the purchase-money was paid, and a bond for title duly made and delivered, together with the possession of the lot, the conveyance to be made when the residue of the purchase-money should be paid. That Peck erected buildings thereon, and leased them, receiving rent from the tenants, out of which the residue of the purchase-money due to Weber, except about $400, was paid previous to the levy and sale, and the entire balance since the levy, &c.

That John A. Peck was lately associated in business, in the city of New Orleans, with defendant, Robert M'Dowell, under the firm of M'Dowell & Peck; that defendants, Robert and James R. M'Dowell, and Robert and David Mills, are co-partners in the city of New Orleans, in the name of M'Dowell, Mills & Co., and are the assignees or successors in business of M'Dowell & Peck, aforesaid. That the defendant, John M'Nish, who claims to be the agent of, or attorney in fact of the late firm of M'Dowell & Peck, and also of the firm of M'Dowell, Mills & Co., is now in the receipt of the rents, &c., of the said lot, and refuses to pay the same to the plaintiff, or to account to him therefor, in fraud of plaintiff's rights, &c. That defendants, colluding, &c., pretend the title to the said lot is in M'Dowell, Mills & Co., by transfer from Sylvester Peck to M'Dowell & Peck, and from them, to M'Dowell, Mills & Co.

And charges that defendants fraudulently, after the levy and sale to plaintiff as aforesaid, caused Weber to make a deed, conveying the legal title of the lot to said M'Dowell & Peck, but fraudulently had the same antedated, so as to bear date February 1st, 1851, and that M'Nish, about the same time, pretending to act as attorney in fact for M'Dowell & Peck, conveyed the same to M'Dowell & Mills, which deed was also fraudulently antedated, so as to bear date 1st September, 1851. That the first deed was acknowledged 17th September, and recorded the 23d of the same month; and the second was acknowledged the 22d, and recorded the 23d September, 1851; which deeds plaintiff charges were made without any consideration, save the payment of the purchase-money out of the rents, &c., and were made to defraud creditors, and are void against the plaintiff; and prays that defendant be compelled to answer on oath; enjoined from collecting any more rents, &c.; for a receiver; the pretended conveyances to be declared fraudulent and void, and plaintiff vested with the legal title; and such other and further relief, &c.

John A. Peck, one of defendants, answered, that Sylvester Peck, in the year 1850, with the advice and consent of this defendant, made a contract with Weber, mentioned in the complaint, for the purchase of the said lot in Stockton.

That this defendant, and Robert M'Dowell, doing business in

New Orleans, under the name of M'Dowell & Peck, and the said Sylvester Peck, and one Reading, doing business at Vicksburg, under the firm of Reading & Peck, were jointly interested in shipping certain lumber and houses to California, each firm being entitled to half the profits, and to share half the losses arising from the venture. That the buildings erected on the lot in Stockton, was a part of those shipped on joint account for said firms ; that the said lot was so purchased for account of the said joint concern, and that the funds of M'Dowell & Peck, of New Orleans, were paid therefor ; that Sylvester F. Peck had no further interest in the purchase of said lot or buildings erected thereon, than as a portion of said joint venture, and that the deed of the said lot was taken in the name of M'Dowell & Peck, because they were the creditors, as between the partners in the said venture, having made by far the largest advance on account thereof.    That the firm of M'Dowell, Mills & Co., succeeded to that of M'Dowell & Peck, and to them was duly transferred the said lot and buildings, they taking the place of M'Dowell & Peck in the said joint venture.

That the firm of Reading & Peck are indebted to the firm of M'Dowell, Mills & Co., over $40,000 for their share of the losses sustained in the venture; that the lot, &c., is partnership property, and liable as such, and will prove insufficient to pay M'Dowell, Mills & Co., the amount of their advances, over and above those made by Reading & Peck.

That this defendant has no knowledge as to the antedating of the deeds as charged, and leaves the plaintiff to his proof, and denies all collusion, fraud, &c., and disclaims any interest in the lot or buildings.   Sworn to, 4th February, 1852.

The answer of Robert M'Dowell, James K. M'Dowell, Robert Mills, David G. Mills, and John M'Nish, admits the contract for the lot in        1850, between S. F. Peck and Weber, but denies that the purchase-money, or any part of it, was paid by S. F. Peck to Weber, but that he, shortly after the contract, transferred his interest therein to J. M'Nish, as the agent of M'Dowell & Peck, who rented the buildings, using the lumber, materials, and money belonging to M'Dowell & Peck ; and as agent aforesaid, paid to Weber the entire amount of the purchase-money con-

tracted to be paid by S. F. Peck, out of funds belonging to M'Dowell & Peck, and took the deed to them, who, by the said agent, conveyed the lot, on the 1st September, to M'Dowell & Mills; and denies that S. F. Peck ever paid any portion of the purchase-money for said lot, or that he erected any buildings thereon, or exercised any control over the same after the conveyance to M'Nish, as agent of M'Dowell & Peck, who received the rents, &c.; and that Weber, on the payment of the purchase-money, as aforesaid, by M'Nish, on the 1st February, 1851, conveyed the said lot to M'Dowell & Peck, who by M'Nish, their agent, conveyed the same, for a valuable consideration, on the 1st day of September, to M'Dowell & Mills; and denies all fraud, &c., all the allegations of the complaint not admitted, &c., and prays judgment for costs, &c.

Sylvester F. Peck deposed, that he purchased the lot of Weber, in the last of July, or beginning of August, 1850; the price agreed to be paid was $4500, $1000 in sixty days from the date of the title bond, the second in ninety days, and so on. All the payments were made up to the time the title-bond was transferred, by lumber and the proceeds of the yard, except about $400, as appeared by the books kept by M'Nish, who was the agent of the company, and acting under deponent's directions; deponent transferred the title-bond, in the latter part of December, or forepart of January, 1851, and knows nothing of the payments since the transfer. The title-bond was executed by Weber, to deponent, but Robert M'Dowell, John A. Peck, A. B. Reading, and himself, were the parties interested, each equally. Deponent assigned the bond and all the property and debts to M'Dowell and J. A. Peck, and delivered it to their agent M'Nish, expressly to pay first, the mechanics for building on the lot; secondly, to pay, D. W. Connalley, the plaintiff, for money borrowed of him, for the use of the company, and other purposes specified; the balance, if any, to go to M'Dowell & Peck, to cover advances made by them, above those made by Reading & S. F. Peck; and this transfer was made in consideration of the agreement of M'Dowell & Peck, by M'Nish, their agent, to assume and pay the demands above specified. The debt to Connalley was the same on which he obtained judgment for $3921.

The money so borrowed, was applied to the use of the company. The business of the company, in the purchase of the lot, and erection of the buildings, and its general business, was done in deponent's name, but for its benefit.

Plaintiff also produced a paper, signed by John M'Nish, dated May 18th, 1851, by which he, M'Nish, bound himself, "to appropriate the proceeds of the lumber, and of the real estate in Stockton, belonging to M'Dowell & Peck, and Reading & Peck, to the payment of the debts due by them, giving D. W. Connalley the preference of his claim against said concern."

Edward Harrison deposed, that the deeds from Weber to M'Dowell & Peck, and from M'Nish, attorney, &c., to M'Dowell, Mills & Co., were, at the request of M'Nish, prepared by him (the witness); that they were prepared and signed, about the time of their respective dates, but remained in his possession, or, were not in fact delivered, until the date of the acknowledgment of each respectively; that no one of defendants was present, except M'Nish, who, as to the last-mentioned deed, assumed to act for both grantor and grantee.

John M'Nish, on the part of defendant, deposed, that he came from New Orleans to California, about the    day of 1850; that as soon as the title-bond, from Weber to S. F. Peck, was made, he, as agent of M'Dowell & Peck, took possession of the lot, superintended the erection of the buildings thereon, and other business of the concern, and has had continued possession ever since, as agent of the parties in interest; that he attended to the making the payments of the purchase-money to Weber; that there was no dissolution of the partnership, at the time of the assignment of the bond between Reading & Peck, and M'Dowell & Peck. That when he made the writing above mentioned, to pay the judgment due to plaintiff, he did so under a misrepresentation made by S. F. Peck, by which he was induced to believe that the judgment was recovered against each of the partners in the concern.

That the buildings were erected on the lot, and the entire amount of the purchase-money paid to Weber, from the funds of the firm of M'Dowell & Peck, by the witness, as agent of the said firm, from moneys arising from the sale of lumber or build-

ings, shipped by M'Dowell & Peck, of New Orleans, and Reading & Peck, of Vicksburg.

The title-bond, and the several deeds, assignments, powers of attorney, and papers referred to by the witnesses, were given in evidence.

The parties having waived their right to trial by jury, the cause was submitted to the court, who found for defendant, and ordered judgment accordingly, and plaintiff appealed.

A new trial was not moved.

The court below, upon the facts in evidence, found the judgment of plaintiff, the levy, sale, and sheriff's deed for the lot, as above set forth.

Also the contract between S. F. Peck and Weber, for the lot, the title-bond; which bond was never recorded; the transfer on the 1st December, by S. F. Peck to M'Nish, agent of S. F. Peck, and R. M'Dowell, of New Orleans (M'Dowell & Peck), of all his right, title, and interest to said lot, buildings, &c., and to the title-bond. That M'Dowell & Peck, through their said agent, paid to Weber, the whole purchase-money, cancelled the bond, and received, on the 1st February, 1851, a title from Weber, to said lot, under the names of Robert M'Dowell and John A. Peck, of New Orleans, who on the 1st September, 1851, had conveyed to M'Dowell & Mills, the successors of M'Dowell & Peck. That M'Dowell & Peck, and Reading & Peck, were jointly concerned in a venture of lumber sent to California; that S. F. Peck, of the firm of Reading & Peck, brought a portion of this to Stockton, and contracted with Weber, for the lot for the benefit of the parties in said joint venture; that at the time of the transfer, from S. F. Peck, of his interest in the lot to M'Dowell & Peck, M'Nish, then agent, promised to pay a debt due from S. F. Peck to Connalley, the plaintiff, and that the promise was made through the misrepresentation of S. F. Peck to M'Nish.

"The conclusion therefore is, that at the time of levying the execution, the defendant, S. F. Peck, had no interest in the property, lot, or houses levied on, and that the other defendants, in whom the title to the property is, are not liable under the judgment."

[The opinion of the court does not designate the special defects

in the pleadings, which form the basis of the decision, nor that, portion of the evidence alluded to, as entitling the plaintiff to relief, if the bill had embraced it; nor does the record show that the ground upon which the case turned was assigned for error, or argued by the counsel. The reporter, therefore, can only give an abstract of the bill, answers, and evidence, together with the opinion of the court, as the best view of the case which the record affords.]

HEYDENFELDT, Justice, delivered the opinion of the court, with which WELLS, Justice, concurred.

In the examination of this case, two positions appear to be very clear; first, that the proof does not sustain the allegations of the bill; second, that by the proof, the complainant is entitled to relief in a court of equity, if his pleadings had been properly proved.

The question, therefore, for consideration, is, whether the chancellor acted properly in dismissing the bill, or if he should not, at the hearing, have directed an amendment of the bill, or leave to file a supplemental bill.

As the latter course would save expense, and circuity of action, it is in my opinion the better, if it can be sustained by authority.

The main conflict between the cases I have examined, seems to be, whether an amendment or a supplemental bill should be allowed.

Judge Story has treated the question according to the variety of decisions. In his Eq., Pl. sect. 891, he says, "If upon hearing the cause the plaintiff appears entitled to relief, but the case made by the bill is insufficient to ground a complete decree, the court will not allow an amendment, but it will sometimes give the plaintiff leave to file a supplemental bill, to bring before the court such matter as is necessary, in addition to the case in the original bill." "And in some cases, where a matter has not been put in issue by a bill with sufficient precision, the court has, upon the hearing of the cause, given the plaintiff liberty to amend the bill."

He also says, that amendments are allowed to defendants,

6

with much more caution than to plaintiffs. And yet it is uncommon to refuse these amendments, whenever a proper case is made out.

At sect. 902, the same author proceeds: "Upon the hearing of a cause, the same indulgence will be granted to a defendant as to a plaintiff. If it has appeared that the defendant has not put in issue facts which he ought to have put in issue, and which must necessarily be in issue to enable the court to determine the merits of the case, he will be allowed to amend his answer for the purpose of stating those facts."

It seems to me, that the true doctrine to be declared, as consonant with the authorities, and with the spirit of equity, is, that whenever the evidence conclusively shows the party entitled to relief, an amendment should be allowed or directed, to conform the pleadings to the facts which ought to be in issue, in order to enable the court to decree fully on the merits, and that whenever this is not done it is error.

The present case falls within this doctrine, and it necessarily follows that the decree must be reversed, and the complainant below be permitted to amend his bill, or file a supplemental bill.

The costs will abide the event of the suit.