## PEREA *et al.* v. GALLEGOS.

### *(Supreme Court of New Mexico. January, 1889.)*

EQUITY—PLEADING—AMENDMENT.

> Under Comp. Laws N. M. § 1911, providing that pleadings may be amended by leave of the court at any time before final hearing, a complainant in a bill to set aside a deed, alleging it to have been made with intent to defraud creditors, should be allowed to file an amended bill charging that the deed was, though absolute in form, a mortgage in fact; it appearing from the affidavit of complainant's solicitor that he drew the bill from information received from his client, the original complainant, who spoke no English, and who has since died, and that the facts stated in the amended bill were only discovered at the hearing, and were disclosed by defendant's solicitor, who, contrary to affiant's expectation, testified in the case.[2]

Appeal from district court, Sante Fe county; S. B. AXTELL, Judge.

Bill by José Leandro Perea against Candelaria Montoya Gallegos, to set aside a conveyance made to her by her husband, José M. Gallegos, a debtor of complainant, as fraudulent. José M. Gallegos died before the institution of

---

[1] Same case, *ante,* 175.

[2] After plea in abatement for misjoinder of parties, it is not error to permit plaintiff to amend by striking out the name of the party improperly joined. Beall v. Territory, 1 N. M. 507. Amended pleas may be filed at any time before verdict, to bring the merits of the controversy fairly to trial; but where the new facts set up were known, or ought to have been known, to defendant, leave will not be granted after all the evidence is in. Cotten v. Fidelity & C. Co., 41 Fed. Rep. 506. After a case has been heard at length on the merits, the trial court may, in its discretion, refuse an application for leave to amend the answer by pleading the statute of limitations. Garlington v. Copeland, (S. C.) 10 S. E. Rep. 616. A plaintiff who declares on the common-law right of a servant to recover for injuries received by reason of defective materials knowingly furnished by his master will not be allowed to amend so as to recover under a statute, since that would introduce a new cause of action, even where all the facts required to be set out by the statute are already set out in the common-law declaration, they there being mere surplusage. Bolton v. Railroad Co., (Ga.) 10 S. E. Rep. 352. In ejectment by a husband in the right of his wife, the record may be amended on appeal to join the wife as co-plaintiff. Shaffer v. Eichert, (Pa.) 19 Atl. Rep. 81.

the suit, and during its pendency the complainant also died, whereupon Jesus Maria Perea and another, his administrators, were substituted as complainants. Decree for defendant, and complainants appeal.

*Catron, Thornton & Clancy,* for appellants. *H. L. Waldow* and *William Breeden,* for appellee.

REEVES, J. This is an appeal from the decree of the district court for the defendant and against the complainants in the district court, and appellants in this court. The appellee in the statement of the case, as appears from the brief of her solicitors, admits that the allegations and purpose of the bill were as stated by the appellants, as were also the proceedings down to the time of the reference to the master. The appellants in the statement of the case alleged in their bill of complaint that José L. Perea, in his life-time, filed his bill of equity therein, charging the defendant as a trustee in a resulting trust; alleging, among other things, that one José M. Gallegos, in his life-time, had borrowed of the complainant, José L. Perea, a large sum of money, amounting to about $10,000, and that he died insolvent in 1875, without having paid the same; that the appellee was his wife; and that during his life-time, and while he was largely indebted to other parties, and after the accruing of about $3,500 of the indebtedness due to José L. Perea, deceased, José M. Gallegos, without any consideration, and for the fraudulent purpose of hindering and delaying his creditors, conveyed certain real estate described in the bill to his wife, the appellee; and praying that said transfer be declared fraudulent and void as to creditors, and that the appellee be declared a trustee of an implied trust for their benefit, that the property be sold to pay complainant's debt, and that an account be taken of the portion of the property sold by the appellee, and of the rents and profits received by her, and for general relief.

After the filing of the original bill, José L. Perea died, when the complainants were appointed administrators of his estate, and the suit revived in their names, and the amended bill of July 7, 1884, set out in the transcript filed. To this amended bill the appellee filed a demurrer and an answer. The demurrer was sustained as to part of the bill. Respondent in her answer denied the insolvency of José M. Gallegos. She admitted his liabilities as one of the sureties on the bond of Beall as administrator, and the settlement and discharge of such liability as stated in complainant's bill. She admitted that José M. Gallegos conveyed to her the real estate mentioned and described in the bill of complaint, but denied that it was for the fraudulent purpose of covering up his property so as to hinder and delay his creditors. She denied that conveyance was without consideration, but averred that it was made to satisfy her for an indebtedness due her by José M. Gallegos; that she accepted the conveyance in satisfaction of such indebtedness; and also, as a further consideration, she risked her own individual and unincumbered real estate. The complainants filed a replication to the answer, and the cause was referred to G. W. Ritch as a special master, with direction to take proofs as to the truth of the material allegations contained in the pleadings, and report the same to the court, with his findings thereon.

The charges that José Manuel Gallegos was insolvent, that his conveyance to the respondent was without consideration, and made to defraud his creditors, were the material allegations in the complainant's bill. The denial of these allegations by the respondent, and the averment that the conveyance to her was made to satisfy José Manuel Gallegos' indebtedness to her, and that she so accepted it, were the material allegations of her answer.

Abraham Staab, a witness for the complainants, testified that José Manuel Gallegos, with others, were sureties upon an administration bond, upon which bond a judgment was obtained against the bondsmen in the sum of about $60,000. That the judgment was compromised at about $22,000, of which sum Gallegos was to pay $4,000, as agreed among the sureties. Gallegos, not

being able to pay the amount at the time, gave his note for the $4,000, with Probst and Kirchner as sureties, and, in consideration of their indorsement, he agreed to give them a mortgage upon his residence property in Sante Fe. When it was discovered that the title to the south portion of the property was vested in the respondent, and the title to the north portion of the property was vested in José Manuel Gallegos, Probst and Kirchner declined to become sureties on the note. That the witness and one of the sureties called on Mr. Gallegos to arrange the matter in order for him to pay his portion of the judgment. Mr. Gallegos then, in presence of witnesses, Sigmund Seligman, William Rosenthal, and the respondent, agreed to convey his portion of the property to the respondent, with the understanding that she would join in the mortgage to secure Probst and Kirchner, his indorsers on the note.

Henry L. Waldow, a witness for complainants, testified that he was called upon by Probst and Kirchner to draw some papers, and guard their interest in a transaction they were about to have with José Manuel Gallegos, growing out of a settlement or compromise of a debt by the Beall sureties, of whom Mr. Gallegos was one. Gallegos not being able to pay his share, it was agreed to take his note for about $4,000, with good sureties. Probst and Kirchner had agreed to become such sureties, provided they were properly secured, and Gallegos had agreed to give a mortgage for such surety upon his residence property in Sante Fe, which surety was acceptable to Probst and Kirchner. At that time Gallegos lived on the inside of the plaza, in the northern part of the house, occupying rooms also on the eastern side of the plaza. At the time witness supposed that the title to the whole of the property was in Mr. Gallegos, and witness drew a mortgage covering all of what was known as the "Gallegos House," including other property adjacent to it, which he considered belonged to the same property; and he went to Mr. Gallegos for the purpose of getting him and his wife, the respondent, to execute the mortgage. When the respondent came into the room, witness explained the nature of the transaction to her, when he discovered from her statements that the south part of the property was in her name, and she refused to execute the mortgage unless Mr. Gallegos would convey to her that part of the property which was in his name to secure or indemnify her against loss by reason of subjecting her portion of the property to the mortgage. The witness explained to Probst and Kirchner this difficulty about the title, and informed them that the respondent refused to sign the mortgage. Probst and Kirchner insisted upon having the whole of the title included in the mortgage. When witness again saw Mr. and Mrs. Gallegos it was agreed that Mr. Gallegos should convey to Mrs. Gallegos his part of the property to induce her to sign the mortgage. Witness thinks the deed and the mortgage were executed on the same day.

The complainants offered in evidence a copy of the deed from José Manuel Gallegos to the respondent, bearing date March 16, 1874; also the mortgage to Probst and Kirchner, dated March 16, 1874; also the promissory note executed by José Manuel Gallegos, with Probst and Kirchner as sureties, for $4,000, dated March 16, 1874.

The respondent testified, in her own behalf, that José Manuel Gallegos gave her the deed in consideration of the $4,000 which he owed her. The $4,000 was on account of 500 sheep, 40 cows, the rent of her own house, which he collected, and for board which he received from boarders. After the evidence was taken the complainants filed an affidavit of surprise, and moved the court for leave to amend their bill so as to make it conform to the facts proven.

The affidavit is as follows:

"W. T. Thornton, having been first duly sworn, upon oath states that he is a member of the firm of Catron, Thornton & Clancy, and that he has had special charge of the above-entitled cause, and prepared the bill and amended

bill in said cause, and that he prepared the above motion for leave to amend said amended bill. Affiant further states that from information derived from his client, José Leandro Perea, who is now deceased, and who was a Mexican, and did not speak the English language, affiant was led to believe that the conveyance made from the said José Manuel Gallegos to the said defendant, Candelaria Montoya de Gallegos, was made with a fraudulent intent of hindering and delaying the creditors of the said José Manuel in collecting their debts, and that under said impression he framed the original and amended bill, and that he did not receive any information of the actual circumstances of the making of the said conveyance by the said José Manuel Gallegos to the said respondent until, upon the taking of the testimony, he was informed of the real facts; and that the said original deed, in place of having been intended as a gift to the said respondent, and made with a view of covering up and defrauding his creditors, was intended as a mortgage to secure respondent from loss occasioned by said respondent joining the said José Manuel in the execution of a mortgage which should cover the separate property of the said respondent; that, since the information came to his knowledge, he prepared the within amended bill, so that the same might conform to the actual facts as proven by the witnesses. Affiant states that said motion is not made for vexation or delay, but that the proposed amendment is material, and could not with reasonable diligence have been sooner introduced into the bill; that the principal witness from whom said affiant obtained said information was one of the solicitors for respondent; and that affiant had no knowledge of what he would swear to, or of the kind of testimony he would give, until the day he was examined, nor did he believe in fact that he would be a witness in the case.

[Signed]                                    "W. T. THORNTON.

"Subscribed and sworn to before me this 13th day of February, 1885. [Signed]   "S. B. AXTELL, Judge of First District."

The motion was overruled by the court, at the costs of the complainants.

The proposed amended bill is set out in the transcript. It alleges that the conveyance from José M. Gallegos to the respondent, though absolute on its face, was in fact intended as a mortgage for the purpose of securing her and her property from any liability which might accrue to her by reason of the execution of the mortgage to Probst and Kirchner, and praying that the conveyance to the respondent be declared to have been a mortgage made to her in trust to secure her from liability, and further praying substantially as in the former amended bill. The motion to amend was denied, and overruled, at the costs of the complainant.

Afterwards, on the hearing of the cause, the exceptions to the master's report were overruled, and his findings and report confirmed, and the conveyance by José Manuel Gallegos to the respondent was adjudged and decreed by the court not fraudulent or in fraud of creditors, but made in good faith, upon a good and sufficient consideration. It was further decreed by the court that the complainants have nothing by their bill, and that it be dismissed, at their costs.

It appears that the note for $4,000, signed by Probst and Kirchner as sureties, is dated March 16, 1874. The mortgage given them by Gallegos and wife, and the deed by Gallegos to his wife, bear the same date,—all of which indicates with clearness that the giving of the note and mortgage and deed was one transaction, done at the same time. Waldow and Staab both agree that the deed was to be made to enable a mortgage on the whole property to be given, and neither of them say a word about any other consideration or indebtedness being mentioned.

In the case of *Connalley* v. *Peck* the court said: "Where the proof does not sustain the allegations of the bill, and where, by the proof, the complain-

ant would be entitled to relief in a court of equity, if his pleadings had been properly framed, an amendment should be allowed or directed to conform the pleadings to the facts which ought to be in issue, in order to enable the court to decree fully on the merits, and, whenever this is not done, it is error." 3 Cal. 75. "Where a matter has not been put in issue with sufficient precision, the court has, upon hearing the cause, given the plaintiff liberty to amend the bill, for the purpose of making the necessary alteration." 1 Daniell, Ch. Pr. 418; *Lewis* v. *Darling*, 16 How. 1.

"Each party, by leave of the court, shall have leave to amend, upon such terms as the court may think proper, at any time before verdict, judgment, or decree." Comp. Laws N. M. § 1911; *Beall* v. *Territory*, 1 N. M. 507; rule 40, p. 40, Dist. Courts, Equity.

The proposed amendment comes within the principle laid down in the cases cited above, and comes within the statute and rules of practice in equity. The decree is reversed, and the cause remanded, with instructions to the district court to reopen the case, and allow the complainants' amendment on such terms, as to the payment of the costs, as the court may impose, and for further proceedings in the cause.

LONG, C. J., and BRINKER and HENDERSON, JJ., concur.