## JOHN H. LEWIS, APPELLANT, v. SARAH DARLING.

Where a bill in chancery was filed by a legatee against the person who had·married the daughter and residuary devisee of the testator, (there having been no administration in the United States upon the estate,) this daughter or her representatives if she were dead, ought to have been made a party defendant.

But if the complainant appears to be entitled to relief, the court will allow the bill to be amended, and even if it be an appeal, will remand the case for this purpose.

Where the will, by construction, shows an intention to charge the real estate with the payment of a legacy, it is not necessary to aver in the bill a deficiency of personal assets.

The real estate will be charged with the payment of legacies where a testator gives several legacies, and then, without creating an express trust to pay them, makes a general residuary disposition of the whole estate, blending the realty and personalty together in one fund. This is an exception to the general rule that the personal estate is the first fund for the payment of debts and legacies.

Where it appears, by the admissions and proofs, that the defendant has substantially under his control a large property of the testator which he intended to charge with the payment of the legacy in question, the complainant is entitled to relief although the land lies beyond the limits of the State in which the suit is brought.

THIS was an appeal from the District Court of the United States for the Northern District of Alabama, exercising Circuit Court equity jurisdiction, under the act of Congress of February 19, 1831, ch. 28, (4 Stat. at Large, p. 444.)·

The following is the statement contained in the brief of the counsel for the appellant, which is adopted by the court, in their opinion. ·

A bill was filed March 16, 1846, by the appellee against the appellant — alleging, that in the year 1822, one Samuel Betts, a citizen of the State of Connecticut, but transacting business at Havana, in the Island of Cuba, as a partner in the firm of F. M. Arredondo & Son, died at Havana, leaving a will in due form of law, proven and admitted to record in that city, by

which he bequeathed to the complainant, Darling, a legacy of $2,500. That Betts left but one child, his daughter Mary, who has since married the defendant Lewis — and that a tract of several hundred thousand acres of land, in the present State of Florida, was held and owned 'by the firm, of which Betts was a partner. That by a decree of the proper court of the State of Florida, Lewis, the defendant, has been declared entitled to 60,-000 acres of this land, in right of his wife, the daughter of said Betts, which is worth more than $100,000; that Lewis had also received a deed of conveyance for 15,000 acres of land, valued at $50,000, which was the property of Betts, as a partner of the firm. And, in addition to this, also received large sums of money belonging to Betts's estate. The bill prays, that Exhibit A, (a copy of Betts's will,) and Exhibit B, (a copy of the answer of the defendant, Lewis, to a bill filed in the Superior Court of the District of East Florida, in the *now* State of Florida, by John Brush "*et al.*" *v.* Lewis "*et al.*") be considered parts of the bill. And propounds interrogatories to. Lewis: 1st. As to whether Exhibit A is a correct copy of that which defendant, in the case against him in Florida, had set out in his answer there, as the will of Betts? 2d. Whether the original will was in defendant's possession; if not, why, and where it was, and was it admitted to probate in Havana? 3d. Whether defendant received any property, lands, or moneys, from the estate of Betts, and if so, whether it was the property of Betts, individually, or as a partner of the firm of Arredondo & Son, and what was its value? 4th. Whether Exhibit B was a true copy of the answer it purported to be? 5th. Whether Joseph Fenwick (who by the will of Betts was appointed executor in the United States) did ever, or did then, reside in Alabama, or where he then resided? 6th. What the value of the property was, received by defendant from Betts's estate; when was it received, and what was the rate of interest in Florida and in Cuba? And prays process to procure full answers to the interrogatories, and payment of the legacy, if it appear that the defendant has received from Betts's estate enough to satisfy the complainant.

On page 5 of Record, in complainant's Exhibit A, will be seen the appointment of Joseph Fenwick as the executor of Betts in the United States, and the legacy bequeathed, as stated in the bill. The residue of the testator's property, after a few minor dispositions, is devised to his only child, the wife of the defendant.

Exhibit B, which complainant makes a part of her bill, shows that the large tract of land mentioned in the bill did belong to the firm of Arredondo & Son, of which Betts was a member, and sets out how Lewis, by marriage with the daugh-

ter, the sole heir of Betts, became entitled to a portion of it. Lewis, in that answer, also states, with regard to the 15,000 acres mentioned in the bill in this case, that, being ignorant of the true rights of his wife, in the year 1831 he agreed with F. M. Arredondo upon the terms of a compromise as to his wife's interest in said lands; by which agreement he and his wife were to receive 15,000 acres, as an undivided portion of the balance of the tract, after certain sales which had been previously made by Arredondo & Son; and, in consideration of which, he and his wife were to relinquish forever, all rights to any further or other portion of said land, by virtue of the interest of Samuel Betts. That a deed was executed by said F. M. Arredondo, conveying to Lewis and wife, 15,000 acres of the land, and signed and delivered to Lewis, but that he and his wife had refused to execute any deed of release or relinquishment of their interest in said land — alleging as a reason for not doing so, that he ascertained Arredondo had not made full and fair representations of Betts's interest in the land, and had either by mistake, or with fraudulent purpose, made incorrect statements in the recitals of the deed of the sales previously made, and that he (the defendant) had therefore always regarded the said deed of Arredondo to himself and wife as void, and had claimed nothing under it since he ascertained the facts above referred to, and had always refused to carry out the verbal agreement of the compromise, and averring Betts's interest as partner to the extent of one third, in the large tract of land belonging to the firm of Arredondo & Son, he prays a decree for partition of said lands, and that the portion to which he is entitled in right of his wife, when established to the satisfaction of the court, be allotted to him by a decree to that effect.

On page 11 of Record, is defendant Lewis's first answer to the present bill, in which he totally denies having ever received one cent of value from Betts's estate, either in real, personal, or mixed property. But this answer being objected to as insufficient and evasive, the court below, May 21st, 1846, ruled that it was insufficient — but also ruled, that the bill did not allege sufficient matter for equitable relief, it not showing that the executor had not paid the legacy, and if it had not been paid, did not show any reason for proceeding against the residuary legatee instead of the executor.

Thereupon the complainant filed her amended bill, stating that "no one, to her knowledge or belief, had ever taken out letters testamentary or of administration upon the estate of Betts, either in the State of Alabama or elsewhere," and "that no person had ever paid the legacy, or any part thereof," and that no person but defendant had ever received any part of

Betts's estate, and called upon defendant to state, whether any one had taken out letters upon the estate.

Defendant then puts in his second answer, stating that he was a defendant in a suit in Chancery in Florida, brought against him and others by John H. Brush and others, and that before the termination of said suit, a copy of the will of Betts was filed by him as part of the evidence of his claim, in right of his wife. The original will was in Spanish, and he obtained a Spanish copy of it from the proper depository in the city of Havana. He believed that a Spanish copy and an English translation were filed among the papers in that suit. That the suit was not tried in the regular way — but the parties entered into a covenant or agreement, which was put upon the records of the Court of Florida, and was, by consent, made the decree of that court. That the will was not adjudicated upon; — cannot say on his oath that the Exhibit A is a correct translation of the original —but it does not differ from the English copy filed in the Florida case. To the third interrogatory, he states, that he has received no property, lands, or moneys from the estate of Betts. That a decree in the Florida case had been entered by consent of parties, and that the decree gave to his wife a large amount of land — but there was no decree in favor of him — and the decree in favor of his wife was not a final one — needing the report of commissioners appointed to make partition of the land before it became a final decree. Cannot say what is the value of the land decreed to his wife, because the decree is not final, and awaits the further action of the court. He admits the Exhibit B to the bill to be a true copy of the answer filed by him in the Florida case. States that Joseph Fenwick did reside in Alabama, and believes he is dead; and that he does not know or believe that any person has taken out letters of administration upon the estate of Betts in the United States. He does not know whether there was or was not administration in Cuba — and has no information on the subject; and suggesting the want of parties, prays to be dismissed.

No exception to this answer appears on record; but on the 23d November, 1847, the court decide the answer to be insufficient, and also that the bill was defective in not alleging sufficient matters for equitable relief, in not showing that the executors had not paid the legacy, and that not being shown in alleging no reasons for proceeding against the residuary legatee instead of the executor.

Leave to amend was granted; but instead of so doing the complainant filed her replication, averring the sufficiency of her bill, the insufficiency of the answer, and traversing the statements of the latter.

Lewis v. Darling.

On November 23d, 1847, the court below decreed in favor of complainant, ordering that she recover against the defendant $7,645.45, the amount of the legacy with interest and costs, and ordered execution to issue accordingly.

On November 24th, 1847, defendant filed a petition for rehearing, alleging error in the decree; because the decree in the Florida case was not final, and he had not, as yet, received in right of his wife, or on his own account, the least benefit from that decree, nor was it certain that he ever would. For the report of the commissioners appointed to make partition in the suit in Florida had been objected to by some of the parties, and set aside by the court, and that another commission had been appointed which could not report before the next term of the court, in June, 1848; that he would, therefore, under the decree, have to pay a large sum of money to the complainant out of his own funds, when he had received nothing under the decree rendered in favor of his wife. He also states that in the case in Florida, a petition for leave to file a bill in the nature of a bill of review for the purpose of opening the decree in that court was then pending there, and submits a decision of the Supreme Court of the State of Florida, showing that by the decision of that court and the acts of assembly of Florida, the decree directing the partition of lands is not a final but an interlocutory decree.

He also urges that he should not be charged with the 15,000 acres mentioned in the deed from Arredondo, because the complainant makes his answer in the Florida case a part of her bill, and in that answer it is shown, that that deed is treated as void, and he has never claimed any thing under it, and that so far as it can be considered as a portion of his wife's interest in the estate, it is wholly merged in the decree for 60,000 acres in the suit in Florida.

On November 29th, 1848, defendant filed his affidavit, stating that since his petition for rehearing, the leave to file a bill in the nature of a bill of review in the court of Florida, referred to in said petition, had been granted in that court, that the bill had been accordingly filed, and that it had wholly suspended the execution of the decree there obtained — that he had answered that bill, and the same is at issue. That neither himself nor his wife had as yet received one dollar in real, personal, or mixed property from Betts's estate.

On December 2d, 1848, the court, upon argument of the petition for rehearing, dismissed it, and thereupon the defendant prayed an appeal. Nearly all the testimony embraced in the residue of the record appears to bear upon the partnership relations and the interest of Betts in the Florida lands, facts which are not disputed.

1 *

Lewis *v.* Darling.

But on page 77 it will be seen that the proceedings in a case in the court below between this appellant and Burr Hubbell Betts, (who is one of the legatees in the will of Samuel Betts,) were produced in evidence in the trial, and that the bill in those proceedings, which in its general nature resembles the present bill, refers to a certain portion of the property of Betts (the deceased) which had come into the hands of the appellant by a conveyance there referred to as Exhibit C. That conveyance will be found on page 28 of record, and is a deed made by F. M. Arredondo to appellant and wife in 1831, stating that Samuel Betts had in his lifetime conveyed to the grantor certain property in trust for creditors, and the grantees having obtained from these creditors assignments of all their right and claim to the property, it was thereby conveyed to the grantees.

The first appeal was not taken within the time specified by law, and another appeal was granted 23d May, 1850.

This appeal, also, was not acted upon for the reason assigned on page 86, that a compromise was pending between the parties. In the mean time the case was docketed and dismissed under the rule of this court, and accordingly a third appeal was granted, and is now prosecuted.

The case was argued by Mr. Reverdy Johnson, and Mr. Reverdy Johnson, junior, for the appellant, and by Mr. Butler, for the appellee.

The points made by the counsel for the appellant were the following:

1st. The bill is materially defective for want of parties; the wife of defendant, through whom alone he claims, and whose right he represents, being an essential party to the proceedings. Story's Eq. Pl. § 75, 77, 137, 138; 22d and 52d Rules of Eq. Prac.

2d. Neither the original nor the amended bill allege that *all* the personal property (whatever it was) had come into the possession of the defendant, nor that the part that did come, was sufficient to pay the legacy. Story's Eq. Pl. § 241, 257.

3d. Nor do they aver that in fact there was not sufficient personal property to pay the legacy. 1 Story's Com. Eq. § 571; Hoye *v.* Bewer, 3 Gill & Johns. 153.

4th. The effect of the plaintiff's replication being to admit the sufficiency of defendant's second answer, there is no evidence to authorize the decree against the defendant. Story's Eq. Pl. § 877; 61st Rule Eq. Prac.

5th. If this be not the effect of the replication, yet the answer is distinct and full, and there is no evidence that any property belonging to the estate of Samuel Betts, ever came into the hands of the defendant, and he cannot be held liable " *de bonis propriis.*" 1st Florida Rep. 455, Putnam *v.* Lewis.

The points made by Mr. Butler, for the appellee, were the following:

*First.* The specific legacy is charged upon the residuary legacy of those who have a right to take it.

*Second.* It is certain that the residuary legacy, now capable of being reduced into possession by the residuary legatee, is more than sufficient to pay off the specific legacy.

*Third.* The replication of the complainant must be regarded as evidence in the case, as it has not been contradicted by any direct denial of the defendant, but must be regarded as a traverse of the assumptions of the answer. Story's Eq. Plead. p. 793, 794, 801, 802.

*Fourth.* Admitting the technical truth of the defendant in his evasive answer, that the defendant (Lewis) has not received any property of the testator, Samuel Betts, still it appears that he can receive, and is entitled by law to receive, property more than sufficient to pay all the debts of the testator and the specific legacies contained in his will.

*Fifth.* The defendant having intermeddled with, and appropriated to himself an interest in, the estate of Samuel Betts, he cannot exonerate himself from liability to creditors without making some such disclosure as would discharge him under a plea of *plene administravit*.

*Sixth.* The defendant ought not to be allowed to take any exception to the bill of the complainant at this stage of the proceedings; if any exception could have been taken originally, (which the complainant contends could not,) such exception may be regarded as having been waived by the defendant. Story's Plead. p. 74, 89, 301, 302.

Mr. Justice WAYNE delivered the opinion of the court.

We have verified the statement of the pleadings in this case attached to the brief of the counsel for the appellant, by a comparison of it with the record, and shall adopt it for the purpose of giving our judgment upon this appeal.

Upon this statement, the counsel for the appellant urges five grounds for the reversal of the judgment.

1. It is said that the bill is materially defective for want of parties, that the wife of the appellant, through whom alone he claims and whose rights he represents, ought to have been made a party.

2. That there is no allegation in the original or amended bill, that all the personal property of the testator had come into the hands of the appellant, or that so much of it as he may have received, was sufficient to pay the legacy claimed by the appellee, Sarah Darling.

3. That there is no averment in the bill that there was not sufficient personal property to pay the legacy.

4. That the effect of the plaintiff's replication being an admission of the sufficiency of the defendant's second answer, there is no evidence to authorize the decree against the defendant.

5. If this be not the effect of the replication, yet the answer is distinct and full, and there is no evidence that any property belonging to the estate of Samuel Betts ever came into the hands of the defendant, and that he cannot be liable *de bonis propriis.*

We have given these points because they raise every objection which can be made against the judgment of the court below, either upon the pleading or the merits of the case. We will discuss them successively.

The record certainly discloses the fact, that the wife of the appellant has such an interest in the controversy, that no decree can be given which will not affect it. She is the residuary legatee of her father, and all the property given by that clause of his will became hers immediately upon his death. The interest which the appellant may have in it was acquired from his marriage with her, after her father's death. It is strictly marital, and the extent of it during the coverture, or afterwards if he lives longer than his wife, depends upon the law of the sovereignty where the real estate may be, and, so far as the personal property is concerned, upon the investiture of it in the legatee according to the law of her father's domicil at the time of his death. Or it may depend upon a marriage contract, if any was made. We have not undertaken to say what that interest is, or may become. We have only intimated upon what it may depend; and will further say, that the children, in the event of their mother's death, may acquire an interest in the property, independently of their father's control. If she be already dead, then such of the children as are *sui juris* should be made parties to the plaintiff's bill. And if there are other children still minors, the court should have them made parties by a guardian of its appointment, excluding their father from such an office. As the case stands, it is not too late to amend the bill by making the proper parties. The rule in equity, permitting it to be done, is this; that on the hearing of a cause, even upon an appeal, an order may be made for the cause to stand over, with liberty to the plaintiff to amend by adding proper parties, if it appears that the plaintiff is entitled to relief, but that it cannot be given for the want of proper parties. The equity of the plaintiff is sufficiently obvious in this case for the application of the rule. The proofs in the case show that she has a strong

Lewis v. Darling.

claim upon the appellant for the payment of the legacy for which she sues him. It is manifest that the legacy has been made by the testator a charge upon both the real and personal estate which he means to give to his daughter. It will not do, then, to permit it to be defeated in this suit by any mistake or unskilfulness in pleading. We shall then reverse the judgment appealed from, in conformity with the first objection made against it. But we will remand the cause to the Circuit Court for further proceedings, and for the proper parties to be made.

The second and third objections are also exceptions to the sufficiency of the plaintiff's pleadings. It is said, that there are no averments in the bill, that all the personal property of the testator had come into the possession of the appellant. And if any part had come, that it was sufficient to pay the legacy. And further, that the bill contains no averment, that there was not sufficient personal property to pay the legacy. These objections are made upon the supposition that the legacy, in this instance, cannot be charged upon the real estate of the testator il it has been shown that there is not personal property enough to pay the legacy. That depends upon the intention, as it is to be collected from the residuary clause of the testator's will.

It is, "And as to all the rest and remainder of my property, debts, rights, and actions, of what kind and nature soever, that may belong or appertain to me, I name and appoint as my sole and universal heiress, the above named Maria Margaret Betts, my lawful daughter, in order that whatever there may appear to appertain and belong unto me, she may have and inherit the same, with the blessing of God and my own." The testator's real and personal property are found blended by him in the clause together. He leaves to his daughter all of his property, of every kind, which may remain after the antecedent bequests and devises in his will have been paid and given to the objects of his bounty. His daughter is to have "the rest and remainder of his property, debts, rights, and actions, of what kind and nature soever." He had previously, in the will, declared that his property consisted of one third in the House established in this city under the firm of Fernando de la Maza Arredondo and Son, and that it would appear from the accounts, books, and other papers of the company. And he further declares that as both the debts due by him and to him will appear by the books of the company, that he confides it to his partners to collect and pay them. His executors were not to have any thing to do with the collection and payment of his debts.

Their office was to secure any surplus which there might be after his debts were paid, and to apply it according to his will,

in the. manner required by the law of Cuba, where the testator was domiciled at the time of his death. The testator then appoints an executor to fulfil his will in the United States, where he had no personal property. Now it does not appear that either of his executors in Cuba or in the United States ever undertook to administer the testator's estate under his will. Indeed, the reverse is to be taken for the fact, from the statement of the appellant. There can be, then, no personal property of the testator *eo nomine* in the United States over which a court of equity in the United States could have any control for the payment of the legacy.

Nor is this a suit against a party, properly representing the testator, for the application of his personal property to the payment of the legacies. Between the appellant and the testator there is no official privity to give to him any of those rights or imposing upon him any of the obligations of an executorial trust. It is a suit against a defendant who is charged with having received large sums of money for which he is accountable, and which may be applied by a court of equity to the payment of the legacies bequeathed by the testator; and when that has been done, to the purposes of the residuary clause of his will. He is also charged with having under his control the real estate of the testator without the sanction or authority of the executor who was appointed to administer it in the United States. The proofs in the record show it to be so. In such a case such averments as are called for by the second and third objections are not necessary. If this were not so, the language of the residuary clause of the will would make such averments unnecessary. The testator has made bequests of money antecedently to that clause, without creating an express trust to pay them, and has blended the realty and personalty of his estate together in one fund in the residuary clause. That of itself makes his bequests of money a charge upon the real estate, excluding from it the previous devises of land to Fenwick, Wallace, and to John and Fernando Arredondo.

The rule in such a case is, that where a testator gives several legacies, and then, without creating an express trust to pay them, makes a general residuary disposition of the whole estate, blending the realty and personalty together in one fund, the real estate will be charged with legacies, for in such a case, the "residue" can only mean what remains after satisfying the previous gifts. Hill on Trustees, 508. Such is the settled law both in England and in the United States, though cases do not often occur for its application. Where one does occur, a legatee may sue to recover the legacy, without distinguishing in his bill the estate into the two kinds of realty and personalty, because it

is the manifest intention of the testator that both should be charged with the payment of the money legacies. Nor does this conflict at all with that principle of equity jurisprudence, declaring that generally, the personal estate of the testator is the first fund for the payment of debts and legacies. The rule has its exceptions, and this is one of them.

Ambrey v. Middleton, 2 Eq. C. Abr. 479; Hassel v. Hassel, 2 Dick. 526; Brudenell v. Boughton, 2 Atk. 268; Bench v. Biles, 4 Mad. 187; Cole v. Turner, 4 Russell, 376; Mirehouse v. Scaife, 2 M. & Cr. 695, 707–8; Edgell v. Haywood, 3 Atk. 358; Kidney v. Coussmaker, 1 Ves. Jr. 436; Nichols v. Postlethwaite, 2 Dall. 131; Hassanclever v. Tucker, 2 Binney, 525; Witman v. Norton, 6 Binn. 395; McLanahan v. Wyant, 1 Penn. 111; Adams v. Brackett, 5 Met. 280; Van Winkle v. Van Houten, 2 Green, Ch. 172; Downman v. Rust, 6 Rand. 587; Lupton v. Lupton, 2 Johns. Ch. Rep. 618, has been supposed to conflict with this rule, but it does not do so, for there it is said to be dependent upon the testator. The same is the case of Dudley v. Andrews, in 8 Taunt.; and Paxson v. Potts, in 2 Green, Ch. 313 is a case in point with this case.

We now proceed to the consideration of the fourth and fifth objections.

It is denied in these points that there is any evidence to authorize a decree in favor of the plaintiff, even if her bill had proper parties. We think differently. The appellant is charged in the bill with having obtained a decree in a court in Florida, in behalf of his wife, for sixty thousand acres of land, it being the real estate of her father, and that it was worth more than one hundred thousand dollars. He is also charged with having received large sums of money of the estate of the testator, and that he has refused to pay the plaintiff's legacy. He is not charged with having received the money eo nomine as the personal estate left by the testator, but as money received for which he is accountable to the estate. The difference between the two is obvious. He answers that he had not received as yet, of the estate of the testator, one cent of value. And when he answers concerning the real estate, he does not deny, but admits that he had obtained a decree in the State of Florida for the land of the testator. His answers are made with such reserve that they must be considered as having been meant to keep from the plaintiff the discovery of what her bill seeks to obtain. The natural and candid reply of the appellant, from his unofficial connection with the testator's estate, should have been a disclosure of the condition of the real estate of the testator — what had been done with it by himself; what contracts had been made by himself in respect to it; whether any arrangement

or bargain had been made for the sale of any part of it; whether any money had been received on account of it, or was to be paid to him. He should have made also a frank disclosure how the personal estate of the testator had been administered by the parties and executors of the testator, if they had administered it at all, and how and to what extent he had received, or arranged to receive it, as a part of his wife's interest in her father's estate.

This admission is found in his petition for a rehearing of this cause. In that he says that he has obtained a decree in the court of Florida, in behalf of his wife, for sixty-two thousand acres of the grant of land which had been made in 1817, to Arredondo & Son, containing two hundred and eighty-nine thousand six hundred and forty-five acres and five sevenths of an acre, of which the testator owned one third — that the grant had been confirmed and held to be valid by the Supreme Court of the United States; and that the grant had been located and surveyed under the authority of the government of the United States. Now it does not matter, for the purposes of this case, (the ownerships of the testator to one third of that grant having been admitted and proved,) that the writ of partition obtained for it by the appellant in Florida is only interlocutory, in the sense that it is not final until the partition shall be made and returned to the court. The ownership of the land is determined by the decree of the Supreme Court of the United States, and the testator's legacies have been made by him a charge upon it. The ownership of the testator of a part of that land cannot be affected by any proceedings, finished or unfinished, in the courts of Florida.

Further, there is proof in the record that the appellant has received for himself and his wife from Fernando M. Arredondo a conveyance for certain property which Betts, the testator, had conveyed to Arredondo and others in trust for the payment of sundry debts due at its date by the testator. Lewis, the appellant, obtains for his wife and for himself assignments from the creditors of the testator of their demands, and takes a reconveyance of the property. What that property is, does not appear, but whatever it may be it is liable, as well as the rest of the testator's property, for the payment of the legacy. Again, the appellant admits, and the proof is that he negotiated with the partners of the testator, for a conveyance of that portion of the Arredondo grant which was conveyed to the testator in behalf of his wife. It appears to have been made by Arredondo, but not to the extent of the testator's interest. On that account he rejected the deed tendered to him, and afterward obtained from the proper court in Florida a decree for 62,000 acres in behalf of his wife in that grant.

Lewis *v.* Darling.

We shall not pursue this part of the case further. We are satisfied that the merits of the controversy were not misunderstood by the learned judge in the court below.

It appears then, from the admissions and proofs in this case, that the appellant has substantially under his control a large property of the testator, which we think from his will that he meant to charge with the payment of the plaintiff's legacy, excluding, as we have said, the devises of land to Fenwick, Wallace, and Fernando and Joseph Arredondo. We repeat that it is a charge upon the rest of the real as well as the personal property of the testator. But he states that the real estate is in another sovereignty than that in which the plaintiff has sued, and is therefore out of the jurisdiction of this court to make any decree concerning it. It is true that the court cannot, in such a case, order the land to be sold for the payment of any decree which it may make in favor of the plaintiff. But it is not without power to act efficiently to cause the defendants to pay any such decree.

The land may be declared to be charged with the payment of the legacy so as to compel the parties who claim the same as the property of the testator to set off or sell a part of it for such purpose. And we further say, if, in the proceedings of the court below hereafter, it shall appear that the appellant has received or made arrangements to receive any fund or money equitably belonging to the testator, sufficient to pay her the plaintiff's legacy, that a decree may be made against him for application of it to that purpose.

We do not consider it necessary to say more in the case.

We shall direct the judgment of the court below to be reversed, for the want of proper parties, and that the court shall allow them to be made parties, with such other amendments to be made by the plaintiff to her bill as the court may judge have not been put in issue by the bill with sufficient precision, and that a master shall be appointed to report upon the testator's estate, and to take an account thereof.

### *Order.*

This cause came on to be heard on the transcript of the record from the District Court of the United States for the Northern District of Alabama, and was argued by counsel. On consideration whereof it is now here ordered, adjudged, and decreed by this court, that the decree of the said District Court in this cause be, and the same is hereby, reversed with costs, for the want of proper parties, and that this cause be, and the same is hereby remanded to the District Court, in order that proper parties may be made, and for further proceedings to be had therein, in conformity to the opinion of this court.