Ranney, J.
In the present position of this case, the whole controversy arises upon the supplemental answers and cross-bills filed by the unpaid legatees, and the answer of William Miller and Moore Simpson thereto; and the whole depends upon the solution of two questions:
1. Are these legacies, by the will of Andrew Simpson, charged upon the lands devised to Moore Simpson ?
2. If so, was Miller, the purchaser, bound to see that the purchase money paid by him, was properly applied in discharge of the lien ?
The legatees undertake to establish such a charge; and, as it *455 stands admitted that Moore Simpson is wholly insolvent, it is evident that their only hope of obtaining payment, depends upon their success.
1. The will of Andrew Simpson was made in 1837, and was evidently executed under the mistaken belief that it took effect immediately and before his death. He lived until October, 1841, and his wife until May, 1851. Subject to the payment of his debts, funeral charges, and the support of himself and wife, he devised all his real and personal property to his son, Moore Simpson; and directed him to pay to each of his other surviving children, and the representatives of one deceased, about an equal sum of money; the one-half in six months after his own decease, and the other, in six months after the decease of his wife.
*Now, it is certainly clear that there is no express charge of these several legacies upon the property devised; and equally so that it was competent for the testator to make them a charge or not, as he saw proper. But an express charge was not necessary. While the intention of the testator, ascertained from the language he has employed, and construed with reference to the subjects of his dispositions and the objects of his bounty (Lessee of Worman v. Teagarden, 2 Ohio St. 382), must, in this as in other cases,' govern ; such intention may be deduced, as a matter of inference or implication, from all the provisions of the will taken and considered together. And in cases like this, I apprehend the intention to be established is rather that of placing the devisee in certain relations to the property, or under certain obligations in respect to it, than an actual contemplation of all the legal consequences resulting from such relations, or of the manner of enforcing such obligations. These, the law annexes as a part of its own system of rules; and judicial decisions furnishing the highest evidence of these rules, are, in such cases, much safer guides than in most cases arising upon the construction of wills.
But the adjudged eases must bo used with careful discrimination. The subject has been often considered from several different points of view, and with different objects ; and the most numerous class of cases in England have been decided upon grounds so peculiar to their system of law as to make them of little value elsewhere.
By the common law, the real estate of a deceased debtor could never be reached by his simple contract creditors. The courts *456, 457 very early felt the injustice of this rule, and to counteract its effect where there was a deficiency of personal assets, seized upon the slightest indication of intention in the will of the testator, to charge such debts upon the realty. In giving effect to this policy, it was at first thought to be necessary that the testator should, before devising the lands sought to be charged, have ^directed his debts to be first paid; or paid out of his estate; or some equivalent expression to evince an intention not to give any thing until his debts were paid. But even this restriction was very soon disregarded, and such introductory words held to be unnecessary; and in Graves v. Graves, 8 Linn. 55, Sir L. Shadwell lays down the doctrine broadly, that wherever the testator, in any part of the will, directs his'debts to be paid, it is, in effect, a direction that they shall be paid in the first instance; and, in case of a deficiency of personal property, charges them upon the realty. This decision has been followed in several later cases; and Mr. Jarman (2 Jarm. on Wills, 519) correctly states the established doctrine to be, that “ a general direction to pay debts in whatever part of the will contained, operates to throw them on the testator’s real estate.”. The better opinion is that it operates, not only against a devisee of the land, but also against the heir, and where the will is confined to a disposition of the personal estate. Sir R. P. Arden, in Shalcross v. Finden, 3 Ves. 739, said he was “very cleaidy of opinion, that whenever a testator says that his debts shall be paid, that will ride over every disposition, either against his heir at law or devisee.”
And, although the rule is subject to an established exception, where the testator has provided a specific fund for the payment of debts, yet this exception is confined within so narrow limits, that Lord Chancellor Lyndhurst, in Price v. North, 1 Turn. and Phill 85, where thetestator had expressly bequeathed the residue of his personal estate, subject to the payment of debts and legacies, held the real estate charged as an auxiliary fund; observing, that courts of equity had always been desirous of sustaining such charges for the benefit of creditors, and that the presumption in their favor was not to bo repelled by anything short of a clear and manifest intention to the contrary. Now, while this whole coui’se of decision is pi*ofessedly based upon the intention of the testator, as derived from the language of the will, it is ^impossible not to see that *458 the anxiety of the courts “ to prevent men from sinning in their graves,” by leaving their debts unpaid, or, for a more substantial reason, to prevent injustice to living creditors, has largely contributed to produce it, and that in very many cases, they have compelled the testator to do an act of justice, which he had very little thought himself of doing. In this state, where all debts constitute a paramount lien upon all the property of the testator, the direct question could never arise; and, as none of the considerations which have influenced these decisions can have any application to the question, whether pecuniary legacies should be charged upon real property devised, it is evident that these decisions would furnish very unsafe guides. The distinction has been taken by the English courts; Lord Macclesfield (in Davis v. Gardner, 2 P. W. 187) observing, in relation to lands descended, that, “ as plain words are necessary to disinherit an heir, so words equally plain are requisite to charge the estate of an heir, which is a disinherison pro tanto;’' and in Shalcross v. Finden, supra, there is said to be “ no reason why a specific devise should not take effect as well as a pecuniary one.” The fact is, that, after a considerable struggle to escape the imputation of inconsistency, it is pretty well settled that a clearer manifestation of intention is requisite to charge the realty with pecuniary legacies than with debts; and the decided weight of authority there, as well as the undivided opinion in this country, is that where it is not expressly done, the implication must be plainly and clearly deducible, from the language of the will, to have that effect. As is said by Mr. Jar-man, “ this distinction appears to have been a natural consequence of the extreme length which the courts had gone, in holding debts to be charged by loose and equivocal expressions.” 2 Jarm. on Wills, 531. In principle, there is little room for doubt upon this subject.
There may be much force in ascribing to a testator the intention to pay his debts before he gives away any of his property — of being just before he is generous — but, as between the mere *objeets of his bounty, where he has given a pecuniary legacy, resting upon and payable from the personal fund, to one, and devised real estate to another, and the personal fund proves insufficient, there can be no reason for disappointing the devisee rather than the legatee, or for shifting the loss from him, upon whom the law has cast it, upon one that the law does not affect, until it is made unmistakably to appear that the testator so intended.' Without such *459 clear manifestation of intention, there is great danger of interfering with his wishes; and to derive it by implication, the language of the will ought to be so explicit as to leave no doubt in the mind of the court that the testator actually contemplated such a contingency, and intended to provide against it.
In all such cases, the question is, whether the estate devised shall bear a burden that the testator has not imposed upon the devisee; and the controversy always relates to the existence or nonexistence of the obligation. To this class properly belongs the case of Lupton v. Lupton, 2 Johns. Ch. 614.
But none of these cases, either in form or substance, reach a case like the present, where the devisee is not only expressly charged with the payment of the legacies, but is also the recipient of all the testator’s real and personal property. Looking at the value of the property devised and the relationship of the legatees, there is much reason for supposing that the testator adopted the method provided in his will,'for the mere purpose of effecting an equal division af his estate. But we express no opinion upon the effect of this circumstance, or upon the fui’ther position taken, that the legatees, being unprovided children, are entitled to the same standing as creditors in the settlement of this question. In our opinion, the charge upon the property in this case, rests upon much more obvious considerations.
Numerous casos in England have settled the doctrine, that a bequest of legacies, followed by a gift of all the residue of the testator’s real and personal property, operates to charge the *entire property with the legacies. Hassell v. Hassell, 2 Lick. 526; Burch v. Biles, 4 Madd. 187; Cole v. Turner, 4 Russ. 376; Mirehouse v. Scaife, 2 Mil. and Craig, 695; 1 Ves. jr. 436; 2 Ib. 267.
The same doctrine has been often applied in the courts of our sister states. McLanihan v. Wyant, 1 Penn. 96 ; Bank v. Donaldson, 7 Watts & Serg. ; Kelsey v. Deyo, 3 Cow. 133; Adams v. Bracket, 5 Met. 280 ; Witman v. Norton, 6 Bin. 395; Downman v. Rust, 6 Rand. 587.
And it has been adopted, in its fullest extent, by the Supi’eme Court of the United States, in the recent case of Lewis v. Darling, 16 How. 1; and, indeed, carried so far as to .permit the legatee to subject the real estate in the first instance, without averring or proving a deficiency of personal assets. These cases certainly do *460 not, in terms, apply to the present, but they fail in application, simply because cases like this do not need the aid of the principle they enforce. They presuppose a bequest of pecuniary legacies, •without any direction as to the person by whom, or the fund from which, they shall be paid, and a subsequent devise of the residue of real and personal properly; and they are founded upon the irresistible implication arising, that the testator intended to give to the devisee only what remained after satisfying previous gifts, and intended to charge both kinds of property, as he has blended both in the disposition. In this case, both kinds are blended, and the gift is expressed to be of the residue, after payment of debts, funeral expenses, and the support of the widow; but surely the inference, that the testator intended to give only what remained after the payment of legacies, is perfectly clear, when he has imposed the payment upon the devisee, and has placed in his hands the only fund from which they could be paid.
And this brings us to the class of cases which do, in terms and principle, apply to, and conclusively govern, this; and they are those in which it has been uniformly held, that where the real ^estate is devised to the person who is directed to pay the legacy, such legacy is an equitable charge upon the property so de-vised, unless there is something in the will itself to indicate a contrary intention on the part of the testator; and this, even, although the devisee is also the executor, or is the residuary legatee of the personal estate. Without entering upon a particular examination of the English cases, it is sufficient to say that the doctrine is sustained by Alcock v. Sparhawk, 2 Vern. 228; Aubrey v. Middleton, 2 Eq. Cas. Abr. 497; Clowdsley v. Pelham, 1 Vern. 411; Elliott v. Hancock, 2 Id. 143; Webb v. Webb, Barn. Ch. 86 ; Lypet v. Carter, 1 Ves. Sr. 499 ; Barker v. Duke of Devonshire, 3 Meriv. 310; — and is so fully settled, as to justify Mr. Jarman in affirming that this circumstance “ has always been held sufficient to charge the real estate.” 2 Jarm. on Wills, 533.
Among the cases in this country, that of Harris v. Fly, 7 Paige Ch. 421, is most expressive in point, and deserves special attention. The controversy arose between pecuniary legatees and a purchaser upon execution of the lands of the devisee. Nicholas Drum devised the lands to his son Aaron Drum, and also made him a residuary legatee. He then gave to each of his two daughters $1,000, to be his the in six annual
*461 The chancellor held the legacies an equitable charge upon the real estate devised; and after a very satisfactory examination of the question, his conclusion is thus stated : “ Upon a very full exam ination of the authorities, I am satisfied, that where real estate is devised upon condition to pay the legacy, or with a direction to the devisee to pay the legacy, in respect to the estate so devised to him, and because that real estate has thus been devised, such real estate is in equity chargeable with the payment of the legacy, unless there is something in the will to rebut /the legal presumption; or from which it can be inferred that the testator intended to exempt the estate devised from that charge.” See *also, Tole v. Hardy, 6 Cow. 333; and 1 McLean, 194. I have said that the course of decision upon this subject, has been uniform. I ought perhaps to excej/t from the remark, the opinion expressed upon the constructions of the will of John Page, in the case of Wright v. Denn, 10 Wheat. 204. It was attempted in that case, to make the legacies a charge upon the land, for the purpose of enlarging a devise without words of limitation to an estate in fee simple. The settlement of the question had very little, if any influence upon the decision of the case ; and it seems to have been done without full consideration, and without any allusion to the marked distinction between legacies which are not, and those which are, required to be paid by the devisee. In no event, could that case be received, to weaken the force of the general current of authority by which the doctrine is supported, or the strong reasons upon which it is founded.
In this ease, Moore Simpson is directed to pay these legacies to the other children of the testator, in respect of the property devised to him, and because the testator has given him the propierty with which to pay them. No attempt is made to burden him with a doubtful liability. The liability is most positively and expressly imposed; and the only question is, how shall it he secured ? Must the legatees trust to his personal responsibility, or have they a lien upon the property devised ? The testator has not expressly said that they should have such lien, and it is difficult to find in the language of the will, any positive indication that he knew of, or intended to provide for it. But, in our opinion, this is not necessary. We are entirely satisfied that reason and justice, as well as the adjudged eases, mark a plain line of distinction, between cases where the property devised is sought to be reached by a legatee on failure *462, 463 of the personal fund, or in exoneration of that fund, and case» where the devisee is required to pay the legacy, as a part consideration for the property. In the one case, it must appear to have been the intention of the testator to créate the burden; and this intention *must be so clearly shown as to convince the court, that he actually foresaw and contemplated the charge, and intended to provide for it. To declare the charge established, without such clear conviction, would be to encounter the hazard of doing injustice to the devisee, and defeating the wishes of the testator.
In the other, it is enough that the devisee stands charged with the payment of the legacy on account of the devise; and the law then attaches a lien upon the estate devised, unless it appears, with equal distinctness, that the testator intended to deprive the legatee of this security. This can do no possible injustice to the devisee,, as he is required to pay no more than the testator has positively imposed, and he has voluntarily assumed; and it is very often necessary to prevent the grossest injustice to the legatees, and the greatest violence to the intention of the testator, by leaving them unpaid.
Indeed, it might not be difficult to place the lien upon much broader, although not more satisfactory, grounds. When Moore Simpson accepted the devise, and took possession of the estate, he became absolutely bound to pay these legacies, as a part of its purchase price. The testator intended he should have the property only upon paying so much of a consideration for it. If he had taken the title by deed, an undoubted equitable lien for these payments would have attached; and I am wholly unable to see how a doctrine resting upon the broad foundations of justice and conscience, and which will not permit one to keep the estate of another until the full consideration is paid (2 Story’s Eq., sec. 1219), can be made to depend upon the manner in which the title is derived. But whether .the lien in this case, might rest upon this doctrine or not, it derives a strong support from the analogy; and I think it very clear, that the actual knowledge and contemplation of such a lien by the testator, are no more important to its existence, than in the case of a vendor of real property.
2. The charge being established, there is very little difficulty *in disposing of the remaining question. It is certain, that Moore Simpson was invested with power to sell the property devised ; (8 Sim. 485; 4 Myl. & Cra. 264; 1 Kee. 559), and that no *464 -distinction is to be taken between estates devised in trust, or those ■only charged with the payment of debts or legacies. 2 Sugd. on Vend. 38; 2 Story’s Eq., sec. 1127; 7 Ves. jr. 323. But, in either case, the general rule undoubtedly is, that wherever the trust or charge is of a defined and limited nature, the purhaser must him.self see, that the purchase money is applied to the proper discharge ■of the trust; but wherever the trust is of a general and unlimited nature, he need not see to it. 2 Story’s Eq., sec. 1129 ;• 2 Sugd. on Vend. 32; Murray v. Ballou, 1 Johns. Ch. 566.
In the application of this rule it has been generally held that where the trust is created, or the charge imposed for the payment of apportion, a mortgage, legacies, or scheduled debts, which are definitely ascertained, and to be paid over immediately to the person entitled; the purchaser, in the view of a court of equity, is bound to see that the money is actually applied to their discharge before the estate is relieved from the burden. But where the trust is created, or the charge exists, for the payment of debts generally, or for the payment of debts and legacies, when an account of the debts necessarily precedes the payment of the legacies; or where the money, is to be x’einvested or otherwise applied by the trustee to purposes which require time, deliberation, and discretion on his part; the purchaser is relieved from such responsibility, and the ■cestui que trusts must look alone to the trustee.
I am aware that several eminent judges have been of opinion that a purchaser is in no case bound to see to the application of the purchase money where the deed or will has designated the person to receive it; and that a power to sell necessarily includes the incidental power to give a valid discharge for the purchase money; and Mr. Powell has defended the same opinion, with %nuch ingenuity and force. 1 Pow. on Mort. 312. But the general course of decision has clearly been otherwise.
In this case the amount of the legacies, and the persons who re■ceive them, are distinctly defined in the will; and they were entitled to payment as soon as the time fixed in the will arrived. There is probably nothing to relieve it from the operation of the general principle; but it does not need the aid of that principle. There never has been any difference of opinion that, if the purchaser knew that the sale involved a breach of trust, or that the money was not to be applied in payment of the debts or legacies charged upon the he would be to hold the to the *465 charge. 2 Sugd. on Vend. 39; Watkins v. Cheeck, 2 Sim. & Stu. 199; Wormley v. Wormley, 8 Wheat. 421; Gardner v. Gardner, 3 Mason, 178.
Now, at the time Miller made his purchase he was fully aware, not only in fact, but from the notice furnished by the Us pendens, that the legacies were not paid, and that no part of the money received from Clyde had been applied to that purpose. While he advanced his money to pay off Clyde, and denied the existence of any lien in favor of the legatees, he participated in the breach of trust, and after finding himself mistaken as to the'-lien, he stands upon no ground to insist that it has been discharged.
We are therefore of opinion that the property is still charged with the payment of these legacies, and shall decree accordingly.
Judge Thurman, having been of counsel, did not sit.