ELLEN E. OGDEN

v.

SAMUEL C. THORNTON.

30 569
64 553

1. The validity of a deed must be determined by facts existing at the time of its execution; it cannot be vitiated by facts arising *ex post facto*.

2. A court of equity must always aim to act upon broad principles of justice, disentangled as much as possible from little technicalities.

3. The court has power to order an amendment even on final hearing. but it is a power never exercised except when the ends of justice render it absolutely necessary, and its exercise will not abridge the right of defence.

4. An appellate tribunal will sometimes reverse a decree and send a cause back to a court of original jurisdiction, in order that an amendment may be made so that the real merits of the controversy may be settled.

5. An acknowledgment of the payment of the purchase-money in the body of the deed, or by a receipt, will not operate as a waiver or discharge of the vendor's lien, if the purchase-money has not, in fact, been paid.

On final hearing on bill, answer and proofs.

*Mr. J. A. Fay*, for complainant.

*Mr. Frederick Voorhees* and *Mr. Peter L. Voorhees*, for defendant.

THE VICE-CHANCELLOR.

The primary purpose of this suit is to set aside a deed made by the complainant to the defendant, bearing date April 14th, 1858. The suit is by a sister against her brother. The parties are the only children of Dr. Samuel C. Thornton, of Burlington county, who died intestate, March 19th, 1858. At the time of his death he owned a house and lot in Moorestown, worth about $8,000, which he

had occupied for many years as his homestead.  He left a
widow, who survived him until May, 1865.   The deed in
controversy conveyed the daughter's interest ·in this prop-
erty.   The bill charges that the defendant procured the
deed by fraud.   It avers that the complainant, at the time
of its execution, was without knowledge or experience in
business affairs, and reposed the utmost confidence in the
integrity and honor of her brother ;  that he represented to
her that a conveyance to him was necessary as a matter of
form, to enable him to manage the property, and to prevent
its being sold at a sacrifice ;  that he promised her that he
would see that her rights were protected, and that she
received her full share of her father's estate ;  that he paid
her nothing then or afterwards, and now denies her right
to the land, and also for compensation for its value.   It
will be observed that the bill does not allege that any price
or sum, or other equivalent, was agreed upon as a consid-
eration.   It simply presents a case of blind confidence on
one side, and of base betrayal on the other.   If the com-
plainant's own evidence could, by any rational interpretation,
be held to establish the case made by her bill, her right to
the relief she asks would be undeniable.

There is much in the defence tending very materially to
support the case made by the bill ; indeed, so strong is its
general drift in that direction that, had even a meagre case
been made on the part of the complainant in support of the
allegations of her bill, I think quite sufficient would have
been found in the evidence of the defendant to have com-
pleted a case so strong in its palpable equities as to have
entitled the complainant to the highest measure of relief it
was in the power of the court to give.   But the complain-
ant's own evidence completely sweeps away the main fact
on which her right to relief on the ground of fraud rests.
She frankly admits, in her direct examination, that her con-
veyance was made in pursuance of a contract with her
brother, which provided for a full and fair consideration.
She says he agreed to give her his share of their father's

Ogden v. Thornton.

books of account; also his share of their mother's real and personal estate, and also his share of the real and personal estate of their maiden aunt, who had long been a member of their family. She is still living. The deed states a consideration of $3,000, and reserves to the complainant the right to occupy and enjoy the premises described, as a home, jointly with her brother, until her marriage. She was under a promise of marriage when the deed was made, and was married in February, 1861. The property was conveyed subject to her mother's right of dower, and was at that time, according to the clear preponderance of proof, worth $8,000.

The defendant, by his answer, says that $3,000 was agreed upon by his sister and himself, after consultation with their mother, as the full and fair value of his sister's interest. Making such deductions for the value of the dower and the right reserved as persons in their situation would be likely to make, the consideration expressed in the deed undoubtedly represented what they believed to be the fair value of the complainant's interest. And such valuation was unquestionably adequate.

The validity of a deed must be determined by facts existing at the time of its execution; it cannot be vitiated by facts occurring subsequently. The evidence leaves no doubt that the defendant, after he got title, made up his mind to defraud his sister of the consideration he had agreed to pay. His purpose, in this respect, is made painfully conspicuous in his attempt to show that she has already received a full equivalent for her conveyance. He says she has received the half of her mother's estate, and she could have received, if she would, the use of the other half. And this he calls an equivalent. Her mother died intestate, and the complainant was therefore entitled, in her own right, and without his favor or assent, to half of her estate. The defendant drew a will for his mother some months before her death, which she never executed, by which the complainant was given the income of her mother's estate during life, with remainder to her children, if she left any, and if not, then

to the defendant. According to the decided weight of the proofs, this disposition of the mother's property was a fraud upon the complainant, under both the arrangement which it is said was made by the defendant with the complainant, and that by the mother with the daughter. But, independent of any question as to a pre-arrangement respecting the disposition of the mother's property, the statement as to what he considers an equivalent for his sister's conveyance manifestly does more credit to his hardihood than it does to his sense of justice or love of truth, and displays, with almost offensive boldness, a purpose to hold his sister's property without paying for it. But a purpose on the part of a purchaser to defraud his vendor of the purchase-money, conceived long after title has passed, affords no ground whatever for nullifying his deed. If a deed is valid when it is delivered, it remains so forever. It is clear the court is powerless to give the complainant relief of the precise nature and extent she asks.

But I regard it as equally clear that, though the court cannot give her just the relief she asks, it is not driven, by any inflexible rule of practice or stern deference to a mere formality, to the hard duty of thrusting her from its presence remediless and mulcted in costs, though fully persuaded she has, upon the undisputed facts, a case founded in the highest equity, and which it is the peculiar duty of a court of conscience to recognize and redress. Such a result would prostrate justice to preserve a mere matter of technical form. If possible, the court must not allow justice to be defeated and wrong to triumph, by a mere mistake or unskillfulness in pleading. A court of equity must always aim to act upon broad principles of justice, disentangled as much as possible from little technicalities. *Cooper's Eq. Pl.* 340.

There can be no doubt, upon the facts of this case, about which there is no ground for controversy or doubt, that the complainant is entitled in equity to a lien upon the lands conveyed for unpaid purchase-money. It is undisputed that she made a conveyance of lands to the defendant; that

Ogden *v.* Thornton.

neither party understood it was by way of gift, but that she was to receive an equivalent, and that nothing has been paid or given. In other words, it is admitted the defendant has acquired title to the complainant's lands upon an implied promise, at least, that he would pay her for them, but so far has paid nothing, and still holds the lands. By his answer, the defendant alleges that $3,000 was agreed upon, at the time of his purchase, as the full and fair value of the lands, and by his testimony he admits that he has never paid a penny for them, either in money or other thing of value. These facts exhibit a perfect case of equitable lien.

The bill as at present framed, it must be admitted, is defective as a bill to establish and enforce a vendor's lien. Stripped of its accusations of fraud, it merely alleges a conveyance by the complainant to the defendant, a promise by the defendant to protect the complainant's interest, and to see that she received her full share of her father's estate, and the further fact that the defendant has not paid for the lands. It will be observed that its material defect is an omission to aver that a price or sum was agreed upon as the consideration or purchase-money. But this fault, I think, may be cured, according to well-settled rules of practice, by amendment. The power of the court to order an amendment, even on final hearing, is unquestionable, but it is a power never exercised, except when the ends of justice render it absolutely necessary, and its exercise will not substantially impair or abridge the right of defence. *Howell* v. *Sebring*, 1 *McCart.* 84; *Midmer* v. *Midmer's ex'rs*, 11 *C. E. Gr.* 299. In *Hill* v. *Filkin*, 2 *P. Wms.* 12, Lord Macclesfield, of his own motion, ordered a bill to be amended on final hearing, so as to raise an entirely new issue. Even appellate tribunals will reverse an order or decree and send a cause back to the court having original jurisdiction, in order than an amendment may be made, so that the real merits of the controversy may be settled. *Kuhl* v. *Martin*, 2 *Stew.* 586; *Walker* v. *Armstrong*, 8 *DeG. M. & J.* 534; *Lewis* v. *Darling*, 16 *How.* 6; *Lum* v. *Winn*, 4 *Desauss.* 66.

Ogden *v.* Thornton.

Where, upon final hearing, the court has the whole case before it, but is embarrassed by defects in the pleadings, it may permit both the bill and answer to be amended. *Story's Eq. Pl.* § 905.

This power has been repeatedly exercised by this court. In *Davison* v. *Davison,* 2 *Beas.* 246, the complainant grounded his right to relief on a contract which he set out specifically in his bill, but by his proofs he established a contract materially different. The court, on final hearing, allowed him to amend so as to make the allegations of his bill correspond with his proofs, and then decreed the relief he was entitled to upon the bill as amended.

In *Armstrong* v. *Ross,* 5 *C. E. Gr.* 109, the complainant was permitted, on final hearing, to amend his bill, so as to change it from an ordinary foreclosure bill to a bill to establish and enforce a vendor's lien, and to take a decree on the bill as thus amended. The mortgage in this case was void because not properly acknowledged by the mortgagor. She was a married woman. A similar amendment had previously been permitted in *Wilson* v. *Brown,* 2 *Beas.* 277, a case substantially like that of *Armstrong* v. *Ross.* This course is obviously right when a change in the bill is indispensable to the accomplishment of justice, and can be made without the slightest harm or injustice to the defendant. That is the case here. The defendant's case is fully before the court. The bill, as at present framed, compelled him to put in evidence every fact, and to resort to every means of proof that he could possibly have deemed necessary if the bill had been framed to establish a vendor's lien. He has been freely heard, and, giving him the utmost benefit of every consideration that can, with any show of reason or fairness, be urged on his behalf, he stands utterly defenceless against the fundamental equity of his sister's claim, viz., that he has obtained title to the property without giving her an equivalent for it. The only shield he attempts to interpose against a just liability is a mere technicality. In my judgment, the complainant should be allowed to amend.

Ogden v. Thornton.

I cannot accept, as entirely trustworthy, the complainant's statement as to what she was to receive as the consideration for the conveyance. Her failure to demand, promptly, her brother's share of the sum collected on her father's books, and likewise to insist, within a reasonable time after her mother's death, that her brother should transfer to her his share of the mother's estate, tends very strongly, in my view, to cast doubt and discredit on the accuracy of her recollection. Besides, she has been very tardy in seeking relief. Her deed was made in 1858; she left her brother's house in 1861; her mother died in 1865, and this suit was not brought until October, 1873. After this great lapse of time, I am not satisfied that she is able to reproduce, with anything like trustworthy accuracy, all the material details of a bargain, in the negotiation of which, it is quite evident, she trusted very largely to the judgment and affection of her brother and her mother. But the evidence, I think, shows conclusively that, at that time, the fair value of her interest in the lands conveyed was $3,000; that is the consideration specified in the deed, and which, the defendant says, was agreed and fixed upon as the fair value of the interest conveyed to him. He can find no fault if he is required to pay a price he admits he assented to as just and fair. The complainant's recovery must be limited to that sum ($3,000), with interest from February 1st, 1861. From the date of the deed up to the time just mentioned, the defendant furnished the complainant with food, and although no express promise to pay for it is shown, it is quite obvious, from the relation of the parties and the other circumstances of the case, that neither party meant that interest should run on the purchase-money while the defendant was furnishing the complainant with her food.

At the time the deed was executed, the complainant receipted for the purchase-money at the foot of the deed. Nothing, however, was paid. The receipt does not affect the complainant's lien. An acknowledgment of the payment of the purchase-money in the body of the deed, or by

a receipt endorsed on the deed, will not operate as a waiver or discharge of the vendor's lien, if the purchase-money has not, in fact, been paid. 1 *Lead. Cas. in Eq.* 484.

After the bill shall have been amended, a decree will be advised establishing the complainant's lien as vendor against the lands conveyed, and directing payment, and, in case default shall be made, that the lands be sold. The complainant is not entitled to costs. Had she exhibited the case on which she now recovers, it is probable all litigation would have been avoided, or, at least, its delay and expense would have been greatly diminished. Of course, if the defendant fails to perform the decree by making payment, he must pay the costs incident to its enforcement.