## LIVELY v. PICTON et al.

### (Circuit Court of Appeals, Sixth Circuit. November 13, 1914.)

### No. 2491.

1. COURTS (§ 514*)—CONFLICTING JURISDICTION—PRIORITY—APPOINTMENT OF RECEIVER.

The appointment of a receiver for a corporation by a state court, with authority to bring suit on a cause of action existing in favor of the corporation, if the court obtained jurisdiction, excludes the right of a receiver subsequently appointed by a court of another state to maintain a suit on the same cause of action.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1434–1436; Dec. Dig. § 514.*

Conflict of jurisdiction with state courts, see note to Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 356.]

2. JUDGMENT (§ 486*)—COLLATERAL ATTACK—GROUNDS—WANT OF JURISDICTION.

On a collateral attack upon the judgment of a court of competent jurisdiction, only jurisdictional defects can be considered.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 919, 920–923; Dec. Dig. § 486.*]

3. CORPORATIONS (§ 668*)—ACTIONS AGAINST FOREIGN CORPORATIONS—SERVICE OF PROCESS.

Gen. Code Ohio, § 11290, which provides that, "when the defendant is a foreign corporation having a managing agent in this state, the service may be upon such agent," is permissive only, and does not render invalid a service upon the president of a foreign corporation, made under section 11288, which authorizes such service upon corporations generally, without distinction between domestic and foreign corporations.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2603–2627; Dec. Dig. § 668.*

Service of process on foreign corporations, see notes to Eldred v. American Palace Car Co., 45 C. C. A. 3; Cella Commission Co. v. Bohlinger, 78 C. C. A. 473.]

4. APPEARANCE (§ 9*)—PROCEEDINGS CONSTITUTING—FILING GENERAL DEMURRER—"GENERAL APPEARANCE."

The filing by a corporation defendant of a general demurrer and motion to set aside an order appointing a receiver, unless limited, constitutes a "general appearance."

[Ed. Note.—For other cases, see Appearance, Cent. Dig. §§ 42–52; Dec. Dig. § 9.*

For other definitions, see Words and Phrases, First and Second Series, General Appearance.]

5. CORPORATIONS (§ 499*)—ACTIONS AGAINST AFTER DISSOLUTION—APPEARANCE.

Code W. Va. 1906, § 1058 (Code 1913, § 1269), which prohibits any person from exercising any powers under the authority of a corporation after the issuance of the Governor's proclamation declaring its delinquency in payment of its license tax, was not intended to interfere with the right to sue such a corporation, nor to prevent an appearance on its behalf in such a suit.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1910, 1911, 1913–1919, 2030; Dec. Dig. § 499.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. Corporations (§ 553*)—Insolvency—Creditors' Suit.

A suit against a corporation, by a creditor on behalf of himself and other creditors, alleging its insolvency and that its property was being unlawfully dissipated by its officers, and alleging the diversion of a trust fund, and praying for a receiver and distribution of its assets, may be maintained, although the debt to the plaintiff is not due.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2201–2216; Dec. Dig. § 553.*]

7. Corporations (§ 559*)—Receivers—Order Appointing—Collateral Attack.

An order of a court of equity appointing a receiver for a corporation is not subject to collateral attack because the court in the exercise of its discretion dispensed with the notice or affidavit on personal knowledge required by its rules.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2241–2252, 2259; Dec. Dig. § 559.*]

8. Courts (§ 514*)—Receivers Appointed in Different Jurisdictions.

Where a court of equity appointed a receiver for the property of a foreign corporation, which, so far as appears, had its only place of business and all of its tangible assets, and its officers and stockholders resided, within the jurisdiction of the court, authority given the receiver to bring suit on a cause of action arising there, for the alleged diversion of a trust fund, excludes the right of a receiver subsequently appointed in the state of incorporation to maintain a suit on the same cause of action, although his suit was first instituted.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1434–1436; Dec. Dig. § 514.*]

Appeal from the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

Suit in equity by Frank Lively, receiver, against John R. Picton, as an individual and as trustee, and the German National Bank. Decree for defendants, and complainant appeals. Affirmed.

Henry Bentley, of Cincinnati, Ohio, for appellant.

Constant Southworth and C. H. Stephens, both of Cincinnati, Ohio, for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. This is an appeal from a decree sustaining pleas to the bill of complaint and dismissing the bill. The material facts are these:

In the year 1901 the National Endowment Company was organized as a corporation under the laws of West Virginia, for the purpose of carrying on a co-operative investment business on the partial payment plan. On June 16, 1911, Margaret Frost began suit in a common pleas court of the state of Ohio, alleging that she was a creditor of the Endowment Company; that on or about July 1st then next she would be entitled to receive from defendant nearly $400, by virtue of endowment certificates issued by it; that there was a large number of other such certificate holders, many at least of whose claims would mature on or about the same July 1st; that at least $25,000 in cash would be required to satisfy the Endowment Company's ob-

ligations, in addition to the amount needed to pay the installment vouchers; that the company's liabilities were largely in excess of its assets; that its expenses and costs of administration absorbed its entire income; that its affairs had been improperly managed; that it had then on hand no funds, securities, or other available assets, and, as then managed, could have no funds to meet its obligations at maturity; that its directors had not held a meeting for more than seven years; that several of them had attempted to resign, but there had been no meeting to act upon the attempted resignations; that it was not meeting its monthly redemption payments; that its principal place of business was originally in Covington, Ky.; that attempt has been made to change such place of business to New York City, but that no business of any kind had ever been transacted there, nor did the Endowment Company have there at any time any assets of any kind; that all the business of every kind transacted by the company for the past nine years was done in the city of Cincinnati (which was within the jurisdiction of the court), where its office, all of its officers, and nearly all, if not all, of its assets were situated. The petition alleged an unlawful diversion and misapplication by the Endowment Company's officers of a trust fund of upwards of $16,000, in which petitioner and other certificate holders were beneficially interested. It prayed judgment in petitioner's favor for upwards of $400, with interest and costs, for a receivership of the property and assets of the Endowment Company within the jurisdiction of the court, including the trust fund mentioned, with power to recover the property and assets, including the trust fund, for an accounting of the assets and liabilities of the Endowment Company, and the distribution of its property among its certificate holders in accordance with their respective interests, as the same should be ascertained.

On the same date William J. McCauley was appointed receiver of the Endowment Company's assets of every kind in Ohio, including choses in action, with full powers of suit, recovery, and collection, the Endowment Company and its representatives being required to deliver to the receiver all the company's assets of every description within the state of Ohio, with injunction against interference with the receiver's official action. The receiver at once qualified, and on the next day took possession of all the Endowment Company's tangible property at its office in Cincinnati. This property consisted of the company's books of account, records, letters and papers, stock certificate book, and corporate seal, together with a deposit account of $1.50 in the German National Bank. There have since come into the possession of the receiver further sums of money aggregating $22. It is stipulated that, so far as the parties know, the foregoing are all the tangible assets of the Endowment Company. Its intangible assets, so far as ascertained by the receiver, consist of the disputed claims against the bank and Picton, its then president, on account of the alleged diversion of trust fund, and certain unpaid stock subscriptions amounting to $5,500. On June 19th service of process was made on Picton, the Endowment Company's president. Although the Endowment Company had never obtained authority to do business in

Ohio, and its stockholders had passed a resolution changing its place of business from Covington, Ky., to New York City, it is stipulated that since the place of business at Covington was closed, in 1902, it had transacted business and had an office in Cincinnati, which was also Picton's office for the doing of his individual business, and from which office most of the Endowment Company's business was transacted, and at which its records were all kept. On June 26th proof of service on Picton was filed. Meanwhile, on June 24th, the Endowment Company demurred to the bill, and moved to set aside the receivership. On September 9th the demurrer was overruled and the motion denied, and the Endowment Company later answered. On November 17th the receiver was granted leave to sue the bank and Picton on the $16,000 demand, as well as six other parties to recover unpaid subscriptions; and thereupon suits were begun against the bank and Picton and against one of the subscribers mentioned.

It is alleged in the bill in the court below, and alleged or admitted in the pleas thereto, that on August 4, 1911, and thus 1 month and 18 days after the appointment of receiver by the Ohio common pleas court, appellant was, by a state court of West Virginia, appointed receiver of the National Endowment Company, and the bill alleges that appellant was by said court directed to bring suit in equity in the court below, against the German National Bank and Picton, individually and as trustee, and such other persons as might in the opinion of the receiver be proper parties to such action. This suit was accordingly begun August 12, 1911, for the recovery of the same $16,000 trust fund involved in the proceedings in the state court. Both defendants pleaded the state court receivership and the proceedings thereunder in bar of the present action. Upon hearing had on the pleas and replications thereto, the pleas were adjudged to be true in fact and sufficient in law and equity; and, complainant not desiring to plead further, the bill of complaint was dismissed, with costs.

[1] The ultimate question is simply: Which of these two receivers is entitled, as representing the Endowment Company, to maintain suit upon the alleged cause of action against the bank and Picton? The two pending suits relate to precisely the same cause of action. They cannot properly coexist. The authority of one receiver excludes that of the other. A question of conflict of jurisdiction between the West Virginia court and the Ohio common pleas court is presented. Action by the Ohio state court in appointing its receiver preceded similar action by the West Virginia court, on which the action in the court below is based; and if by its receivership the common pleas court obtained jurisdiction and control of the cause of action in question, and has not lost control by subsequent proceedings, the property right represented thereby was completely withdrawn from the jurisdiction of the West Virginia state court and the court below, and vested in the Ohio Common Pleas Court. Wabash R. R. Co. v. Adelbert College, 208 U. S. 38, 54, 28 Sup. Ct. 182, 52 L. Ed. 379, and cases there cited; Palmer v. Texas, 212 U. S. 118, 125, 29 Sup. Ct. 230, 53 L. Ed. 435; Porter v. Sabin, 149 U. S. 473, 480, 13 Sup. Ct. 1008, 37 L. Ed. 815, and cases there cited;

Phelps v. Mutual Reserve, etc., Ass'n (C. C. A. 6th Cir.) 112 Fed. 453, 464, 50 C. C. A. 339, 61 L. R. A. 717, and following; High on Receivers (4th Ed.) § 47a; McKay v. Van Kleeck, 133 Mich. 27, 33, 94 N. W. 367.

We say this because the record does not justify a finding that the West Virginia court had, on or before June 16, 1911, by virtue of the proceedings under which appellant was appointed receiver, obtained jurisdiction over either the person of the Endowment Company or the subject-matter of its right of action, against the bank and Picton, unless an admission of such fact is contained in the allegation in Mrs. Frost's bill in the Ohio common pleas court that:

"Through the proper legal sources, the officials of the state of West Virginia have begun proceedings to forfeit its charter for noncompliance to the laws of said state, in which proceedings a receiver is prayed for, in addition to the forfeiture of its franchise; said authorities claiming said defendant has not paid its franchise taxes for three years last past. That several of the stockholders are threatening suit against defendant."

But this allegation was apparently inserted to show the desperate condition of the Endowment Company, and we think falls short of an admission that a court of West Virginia had acquired prior jurisdiction to appoint a receiver over the company's person or the asset in question. Under the statutes of that state, the company was not required to have its principal place of business, or even to have any property or to do any business, therein. Code 1906, §§ 2270, 2295, 2312 (Code 1913, §§ 2874, 2899, 2916). Its principal place of business not being within the state, although it was a domestic as distinguished from a foreign corporation, it was classified by the statute as nonresident. Section 1046 (section 1257). The statute provided for suit in equity by the Attorney General for the recovery of annual license taxes for which the Governor's proclamation might declare a corporation delinquent; and upon entry of decree therefor, if the same is not immediately paid, for decree forfeiting the corporate charter and franchises, the amount of the judgment or decree therefor to be collected by certain officers, "in the same manner that other claims due the state are collected," with power in the court to make in such suit or proceeding "such orders and decrees as he shall deem necessary and proper for a court of equity," including power to "appoint a receiver for any such corporation and order its assets marshaled and distributed among its creditors." Section 1058 (section 1269).

But the statute made no provision even for obtaining judgment for the license taxes, or for forfeiture of charter, receivership, or other remedy (apparently ancillary or supplemental to the recovery of judgment for taxes), except after service of process or notice, either on some officer, director, agent, or stockholder in the state, or on an attorney of record provided to be appointed under section 2313 (section 2917), or by certain substituted service by mail or publication. Section 1059 (section 1270). Nor did the statute attempt to confer upon its courts exclusive jurisdiction over such receivership and distribution. The allegation in question is not an admission that such service, actual or constructive, was had or even attempted, or even

that receivership was prayed over assets such as the right of action here in question, or that the company had any property in the state subject to receivership and distribution. There is no presumption that a court of a foreign state has obtained by the mere filing of a bill jurisdiction over either the person or property of a nonresident defendant, where neither such person nor property is shown to be within the territorial jurisdiction of the court; and there is even now no competent evidence that such jurisdiction ever in fact attached through service of process or notice, or otherwise.

We need not consider what presumption of jurisdiction would arise, had the defendant been a resident corporation, or had its person or property, or both, been shown to be within the territorial jurisdiction of the court, or under a different state of the law as to remedy. In reaching the conclusion that jurisdiction in the West Virginia court has not been shown, we have not overlooked the fact that in the answer of one of the parties, other than the bank and Picton, to the suit of Receiver McCauley on an alleged stock subscription, the jurisdiction of the West Virginia court over the company's person and property is alleged, and the date of the suit given as February, 1909. But it need scarcely be said that this is not competent proof of the fact; and as we are not advised that the Endowment Company, in its defense to the Ohio receivership, set up prior jurisdiction in the West Virginia court (the record not showing the contents or nature of the demurrer or answers, or the grounds of motion to set aside the receivership), we are justified in disregarding the question of prior jurisdiction in that court.

[2] Turning, then, to the receivership proceedings in the Ohio court: The initial question thus is whether the Ohio court had jurisdiction to appoint a receiver; for as the order of that court is not directly, but only collaterally, attacked, the question of jurisdiction can alone be considered. That the order may have been erroneous, inequitable, or ill-advised would not be enough to invalidate it here. Barbour v. Bank, 45 Ohio St. 133, 140, 141, 12 N. E. 5. Upon the general proposition that under collateral attack upon a judgment of a court of competent jurisdiction, only jurisdictional defects can be considered, see Butterfield v. Miller (C. C. A. 6th Cir.) 195 Fed. 200, and cases cited at page 203, 115 C. C. A. 152.

[3] Appellant challenges the jurisdiction of the common pleas court appointing the receiver, both as respects the person of the Endowment Company and the subject-matter of the suit. It is urged that under the Ohio statute personal service must be made upon the managing agent of a foreign corporation, and that a return showing service merely upon the president is insufficient to confer jurisdiction. We think this objection not good. True, Gen. Code, § 11290, provides that:

"When the defendant is a foreign corporation, having a managing agent in this state, the service may be upon such agent."

But we think this permissive mode of service upon a foreign corporation was not intended to be exclusive of the authority of section 11288, which provides, without discrimination between domestic and

foreign corporations, that "a summons against a corporation may be served upon its president. * * *" However, the Endowment Company's by-laws expressly give the president "general management of the business of the company." The service would thus seem good, even under section 11290. American Express Co. v. Johnson, 17 Ohio St. 641; Toledo Computing Scale Co. v. Computing Scale Co. (C. C. A. 6th Cir.) 142 Fed. 919, 922, 74 C. C. A. 89.

[4] Moreover, by section 11287 of the General Code of Ohio "the voluntary appearance of a defendant is equivalent to service"; and the action of the Endowment Company of June 24th (and previous to the appointment of receiver by the West Virginia court) in demurring to plaintiff's petition, and moving to set aside the entry appointing receiver, without (so far as shown by the record) limiting its appearance to the sole purpose of objecting to the jurisdiction of the court over its person, was a voluntary appearance within the section referred to. Handy v. Insurance Co., 37 Ohio St. 366; Elliott v. Lawhead, 43 Ohio St. 171, 172, 1 N. E. 577.

[5] It is objected, however, that, as the Endowment Company's corporate existence had been dissolved, no attorney could lawfully appear for it, because of the general prohibition in section 1058 of the Revised Statutes of West Virginia against the exercise by any person "of any powers under the authority of any such corporation after issuing of the Governor's proclamation" of delinquency in payment of license tax. But it seems clear that this statute was not intended to interfere with the right to sue an expired or dissolved corporation, which was expressly reserved by section 2287 of the Revised Statutes, nor to prevent appearance on its behalf in such suit. Lumber Co. v. Coal Co., 66 W. Va. 696, 703, 66 S. E. 1073, 26 L. R. A. (N. S.) 1101; White Mountain Paper Co. v. Morse Co. (C. C. A. 1st Cir.) 127 Fed. 643, 645, 62 C. C. A. 369. Indeed, it does not affirmatively appear that the company was actually dissolved prior to the appearance in question, which antedates the appointment of receiver by the West Virginia court.

[6] In support of the objection that the common pleas court had no jurisdiction over the subject-matter of the suit in which the receiver was appointed, it is urged that the suit, so far as it sought recovery of money judgment in Mrs. Frost's favor, was prematurely brought, because her demand was not yet due, and that so much of the cause of action as related to the appointment of receiver was merely a prayer therefor, without any action to which the appointment is ancillary. We are not impressed with these propositions. The petition must be considered as a whole. So considered, the proceeding was not a mere suit at law by a creditor to collect a debt, nor was it merely an application for a naked receivership; it was essentially an equitable proceeding for the combined purpose of impounding the corporate assets within the jurisdiction of the court and applying those assets, as a trust fund, to the payment of obligations to petitioner, as well as to others similarly situated. If the Endowment Company was in the insolvent and moribund condition alleged in the petition, the plaintiff therein was justified in beginning the suit without waiting for

the maturing of her debt. Christian v. Mich. Debenture Co., 134 Mich. 171, 177, 96 N. W. 22.

It is further urged that, regardless of the nonmaturity of plaintiff's claim, she had no right, as a debenture holder, to have the affairs of the Endowment Company wound up and to interfere with the internal management of a foreign corporation. It is enough to say of this objection that Mrs. Frost's suit was not instituted for the purpose of forfeiting the corporate franchise or of interfering with the internal management of an active corporation. According to the allegations of her petition, the corporation had, to all intents and purposes, ceased to do business; and the court, under its general control over trusts, had jurisdiction to grant relief against the corporation upon the same terms as against an individual under similar circumstances. Stamm ·v. Northwestern Mutual Benefit Ass'n, 65 Mich. 317, 329, 32 N. W. 710. The petition does not, in our opinion, show that plaintiff is in equal fault with defendant as respects the contract and dealings which form the basis of her suit.

[7] The objection is also made that the common pleas court violated its local rules, which are said to require notice of application for receivership, unless upon the filing of affidavit. The petition alleged that:

"If required to give notice herein, defendant will defeat her action by further dissipating its assets and trust funds," etc.

The order appointing the receiver recites a finding that:

"It would be detrimental to the interests of said creditor and certificate holders to require notice."

If, under the circumstances stated, the court disregarded its local rule by dispensing with affidavit, from the fact, as alleged, that the verification of the petition was only on information and belief (as is permitted under sections 11351 and 11354 of the General Code of Ohio), jurisdiction to appoint the receiver was not thereby lost. The dispensing with notice or affidavit on personal knowledge was matter of judicial discretion, an abuse of which would be reviewable directly, but not collaterally. Taylor v. Easton (C. C. A. 8th Cir.) 180 Fed. 363, 367, 103 C. C. A. 509.

[8] It is said, however, that the order appointing the receiver did not ipso facto put the receiver into possession of the right of action on the part of the Endowment Company against the bank and Picton, and, further, that suit was not begun upon that claim until after appellant had commenced suit on the same cause of action, and against the same parties, in the court below. True, there was and could be no physical possession by the receiver of the intangible right of action mentioned, and a mere constructive possession by the common pleas court of property, tangible or intangible, might not exclude an actual taking of possession by another court; but this case does not involve that proposition. Neither the West Virginia court nor the court below has had possession of any of the Endowment Company's assets, except as the suit against the bank and Picton may involve a constructive possession of that right of action. The company's business seems

to have been largely at least conducted in Ohio. All its officers, directors and stockholders lived in Cincinnati, except its president, who lived across the river at Covington, and who had an office in Cincinnati; and it is admitted that the company had more than 100 resident certificate holders in Ohio. It does not affirmatively appear that it had an actual place of business elsewhere than in that state; complainant contenting himself upon the hearing below with a bare general denial of defendant's assertion that the company "had no other office and transacted no business elsewhere than at said company's office at Cincinnati, Ohio."

In our opinion, the assumption by the common pleas court of jurisdictional authority over all the assets, tangible and intangible, of the Endowment Company within the jurisdiction of the court, coupled with an actual possession, through its receiver, of all the tangible assets within such jurisdiction, and, so far as appears, all such assets anywhere existing, carried with it the right to control the intangible right of action of the Endowment Company, maintaining its office within the jurisdiction of the court, against parties, one of whom resided within such jurisdiction (the other having his place of business therein), and upon a cause of action arising within such jurisdiction, for the alleged diversion of the trust fund referred to in the petition for receivership, invoked for its protection. See Porter v. Sabin, supra, 149 U. S. at page 480, 13 Sup. Ct. 1008, 37 L. Ed. 815; Palmer v. Texas, supra, 212 U. S. at page 129, 29 Sup. Ct. 230, 53 L. Ed. 435, and cases there cited. If this is so, surely jurisdiction once so obtained was not lost because, through a race of diligence, the receiver appointed by the West Virginia court was able to bring suit in the court below before the receiver appointed by the common pleas court could, in view of the delays occasioned by the Endowment Company's opposition to the maintenance of the receivership in that court, bring his action in the state court.

Other objections are made to the jurisdiction in the common pleas court to appoint a receiver. We have considered them all, and are satisfied they are without merit. These views make it unnecessary to consider whether appellant is, as he claims, the statutory receiver of, and successor to, the Endowment Company (rather than a mere chancery receiver), and so entitled to sue in the court below; for if appellant has, since the acquirement of jurisdiction by the common pleas court over the Endowment Company, succeeded to the rights of that company, he is, with the corporation he so represents, equally affected by such jurisdiction.

In our opinion, the court below rightly sustained the pleas of the appellees, and its decree is accordingly affirmed, with costs.