### UNITED STATES v. CAPITAL CITY DAIRY CO.

(District Court, S. D. Ohio, E. D.    April 13, 1915.)

No. 40.

1. INTERNAL REVENUE ⬤⟿28—APPOINTMENT OF RECEIVER—PROOFS.
    On hearing of application for receiver in suit to impound, and apply to government's claim for oleomargarine tax, dividends paid by the manufacturer to stockholders, its officers and directors, which but for fraud should have been paid for said tax, *held*, considering pleadings, affidavits, admissions, and counter affidavits, weight of evidence was with plaintiff.

2. INTERNAL REVENUE ⬤⟿28—COLLECTION—SUIT IN EQUITY.
    Equity has jurisdiction, on the ground of inadequacy of remedy at law, of suit by government, based on fraud and a trust, and involving an accounting of business for 10 years, to impound dividends paid by an oleomargarine manufacturer, since insolvent, to stockholders, its officers, and directors, which but for fraud should have been paid for oleomargarine tax.

3. INTERNAL REVENUE ⬤⟿28—COLLECTION—JUDGMENT AS CONDITION PRECEDENT.
    Judgment need not be obtained before maintenance to suit to impound, and apply to government claim for oleomargarine tax, dividends which an oleomargarine manufacturer, now having no property left, paid to its officers and directors, and which, but for fraud, should have been paid for such tax.

In Equity. Suit by the United States against the Capital City Dairy Company. Heard on application for a receiver. Receiver appointed.

Sherman T. McPherson, U. S. Dist. Atty., of Cincinnati, Ohio, and H. E. Burns, Asst. U. S. Dist. Atty., of Columbus, Ohio, for the United States.

Henry J. Booth, of Booth, Keating, Peters & Pomerene, A. T. Seymour, of Vorys, Sater, Seymour & Pease, and R. W. McCoy, of Webber, McCoy & Jones, all of Columbus, Ohio, for defendant.

SATER, District Judge. The averments of the amended bill briefly are these:

The defendant corporation was, for 10 years or more prior to July 24, 1914, engaged in the manufacture of oleomargarine. On that date the collector of internal revenue ascertained that it had manufactured, sold, and removed from its factory large quantities of oleomargarine, on which, on account of its false and fraudulent representations, the United States had been induced to accept as a tax one-fourth of a cent per pound, whereas the lawful tax was 10 cents per pound. The collector called upon the defendant to account. The demand was refused. The Commissioner of Internal Revenue estimated the tax due

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

from the defendant to be about $2,000,000. He assessed that sum against the defendant and certified the same to the collector. On August 25th the collector notified the defendant of the assessment and demanded payment, which was refused. By reason of the premises the sum assessed became a lien on the defendant's property and rights of property. The notice of lien was filed in the clerk's office of the judicial district and in the office of the county recorder. A subsequent demand of payment was made September 5th for the sum assessed, 5 per cent. penalty, and the interest, which demand was also refused. The collector thereupon took the requisite statutory steps and sold the property specifically described in the bill and credited the proceeds ($209,757.17) on the sum assessed plus penalty and interest, and also returned:

No further goods and chattels and no real estate standing in the name of the Capital City Dairy Company found upon which levy can be made.

The defendant's officers and directors, who for more than 10 years past have been its only stockholders, have paid themselves as stockholders large sums as dividends, amounting to more than $2,000,000 (the exact amount of each of which, the dates when paid, and the amounts paid to each stockholder, for want of exact knowledge, cannot be stated), which dividends were unlawfully paid, and were not paid out of the profits, whereby the officers, directors, and stockholders have unlawfully diverted, converted to their own use, and concealed large sums of property belonging to the defendant, and still continue so to do, for the purpose of placing it beyond the plaintiff's reach. The defendant is insolvent, has abandoned the objects and purposes for which it was created, and has no property on which distraint and levy can be made, or out of which the United States can make the sum due it; the defendant's property having been diverted, converted, and concealed as above mentioned. The remedy at law has been exhausted, and relief can be had in equity only. A receiver is necessary to pursue and reduce to possession and to take charge of the defendant's property, money, and assets so wrongfully and illegally diverted, converted, and concealed, that the same may be used to satisfy the assessment and lien of the plaintiff. The stockholders, directors, and officers all having participated in the wrongdoing, it would be useless to demand that the corporation proceed to recover its aforesaid equitable interest and assets, and if its property is not seized there is great danger of its being placed beyond the plaintiff's reach.

The plaintiff asks that its lien be declared valid, subsisting, and a first lien upon all the defendant's property and rights to property; that the amount of such lien, with interest and costs, be allowed to the plaintiff; that in default of its so doing the defendant and all others claiming under it be forever barred and foreclosed of all equity of redemption, and all claim in and to such property and rights to property, which it is asked may be sold to satisfy the lien, and the proceeds arising therefrom be applied to its payment. A receiver is also asked to take possession of all property and interest of every kind and character belonging to the defendant, with power to collect and reduce to possession by appropriate legal proceedings, or otherwise, the right to

property belonging to the defendant in the money and property diverted and converted to their use and concealed by the officers, directors, and stockholders of the defendant company, and that upon final hearing the sums recovered from such persons be applied to the payment of the plaintiff's assessment and lien, and that an accounting of the defendant's assets and liabilities be had, and for all other and further relief. The petition is verified on belief.

In support of the petition are two affidavits. That of the collector recites the action of the Commissioner of Internal Revenue, the proceedings to sell the defendant's property, the sale, the application of the proceeds arising therefrom, the balance due on the plaintiff's assessment and lien, the absence of leviable property of the defendant out of which to make such balance, that he has examined the defendant's books for 10 years past, that such examination convinces him that the officers and directors paid about $2,000,000 in dividends out of funds which should have been paid to the United States as taxes, and that but for such dividends the defendant would have had no profits for distribution. He expresses the belief that, unless a receiver is immediately appointed, with authority to recover, reduce to possession, and preserve the assets and property of the corporation wrongfully diverted, converted, and concealed, there will be a further concealment, diversion, and dissipation of the same by the persons having possession thereof, and that the plaintiff will thus be left remediless. The affidavit of the deputy collector recites the levy and sale, his inability after diligent search to find any property belonging to the defendant other than that sold, and his belief, resulting from his investigation, that the defendant is insolvent.

The affidavit of Corbett, filed by the defendant, admits the sale set forth in the bill, denies that the defendant has abandoned the purposes and objects for which it was created, and that any of the officers, directors, and stockholders are about to convey assets of the defendant or of their own to place the same beyond the plaintiff's reach. He also denies that the defendant is indebted to plaintiff. There is an averment in the petition, which is denied by certain affidavits filed by the defendant, that one of their number (Dennis Kelly) conveyed with wrongful intent property worth $350,000. Amplification as to this feature of the case is not, for present purposes, necessary.

[1] Giving the denials made in behalf of the defendant and the inferences to be drawn from them their full value, and considering also the fact, freely admitted in oral argument, that the defendant did not appeal to the Commissioner of Internal Revenue, as it might have done under section 3226, Revised Statutes (Comp. St. 1916, § 5949), it must be found, for the purposes of this hearing and for such purpose only, that the weight of the evidence is with the plaintiff; that the several steps taken by the Commissioner of Internal Revenue and the local collector and his deputy were taken as named in the petition, such facts not being controverted; that the defendant has no discoverable property subject to seizure; that it has no working capital or funds of any kind; that the United States has made prima facia proof of its claim; that it has a prima facie valid lien on the property and be-

longings of the defendant; that the defendant is prima facie insolvent; and that the source, amount, and legality of dividends paid to the stockholders is a proper subject of investigation.

[2] The relief which the plaintiff seeks inevitably involves an accounting on an extensive scale. The investigation to be made will extend over a period of 10 years. The daily output of the defendant's factory, and the amount of the defendant's product daily removed from its factory and put into the channels of trade, and also the amount of taxes chargeable against the same, whatever may be the correct rule applicable, will have to be determined. Whether the dividends were declared annually, semiannually, or quarterly is not stated; but, whatever their number may be, each is to be investigated. The sources of the profits distributed on each occasion, the amount paid to each stockholder, the separation of the legal (if any) from the illegal profits and sums distributed, if fraud be proved, and the interest on each respective illegal payment to each stockholder from the date it was made, will have to be ascertained. Books of account for the whole of the period in question, and the entries made thereon, will have to be examined, and evidence given concerning them. Comparison of the results wrought out from such books will have to be made with the statements submitted from time to time to the government. All of the above will be necessary in a suit against the defendant alone, whether such suit be at law or in equity.

Considering how difficult it would be for a judge and jury, in a trial according to the strict rules of common law, where a jury must hastily agree upon a verdict before they separate, to correctly determine the rights of the parties in the present case, the reasons for equitable jurisdiction become apparent. The evidence will necessarily be voluminous. Just deductions from it can be drawn only in a court of equity in which a careful, patient, and extended examination of all such evidence can be made after it is submitted. A court of equity, with its authority to select and appoint a master and refer the cause to him, and with ample power to adapt its proceedings to the requirements of the case as it progresses, is the only tribunal fit to fairly try and justly decide the issues that may be presented in the case. The plaintiff has no adequate remedy at law for the wrongs of which it complains. It seeks to enforce a lien, to recover misappropriated funds, to set aside a fraudulent diversion of them, and so to restore them as to satisfy its claim and lien. The case falls within the rule announced in Lively v. Picton, 218 Fed. 401, 134 C. C. A. 189 (C. C. A. 6). Miers v. Zanesville & Maysville Turnpike Co., 11 Ohio, 273, is instructive and helpful. See, also, Hayden v. Thompson, 71 Fed. 60, 17 C. C. A. 592 (C. C. A. 8); Fechteler v. Palm Bros. & Co., 133 Fed. 462, 66 C. C. A. 336 (C. C. A. 6); Gunn v. Brinkley Car Works & Manufacturing Co., 66 Fed. 382, 13 C. C. A. 529; Castle Creek Water Co. v. City of Aspen, 146 Fed. 8, 76 C. C. A. 516, 8 Ann. Cas. 660 (C. C. A. 8).

If the fraud charged was perpetrated, the money which arose in consequence of the fraud and was paid as dividends is still the defendant's money. The transfer was void—was a nullity—as against

the plaintiff, and the money so paid is held in trust by the several stockholders, respectively, and the plaintiff by operation of law has a claim on it. Swift & Nichols v. Holdridge, Bailey et al., 10 Ohio, 231, 232, 36 Am. Dec. 85. Both a fraud and a trust are involved. The assessment declared by the revenue department is of such a high character as a lien that by statutory provision the plaintiff, to satisfy it, can foreclose as against real estate and seize and sell personalty. The plaintiff, if it has any right at all, has a lien on the funds in the stockholders' possession, not enforceable at present, because they claim title adversely. The ultimate object is to overthrow that claim, divest them of possession, and subject the property to the plaintiff's lien for its satisfaction. But for the fraud of the officers and directors, if it be ultimately found to exist, the money distributed as dividends would have been paid to the United States. Only the defendant's fraudulent statements to the United States left the money in the defendant's hands. If the plaintiff finally establishes its case, it will appear that the directors, officers, and stockholders knowingly and fraudulently withheld such money from the plaintiff. It is essentially an equitable proceeding for impounding the defendant's tangible (if any) and intangible corporate assets, and applying them to the payment of the defendant's obligations to the plaintiff.

[3] On the facts presented, the plaintiff was not required first to obtain a judgment. The case is ruled by the federal cases above cited and especially that of Lively v. Picton. See, also, Hedlund v. Dewey (C. C.) 105 Fed. 541.

The plaintiff is entitled to the appointment of a receiver.

4. CORPORATIONS ⊂⇒665(2)—FOREIGN CORPORATIONS—JURISDICTION.
     When it is sought to obtain a personal judgment against foreign corporation, it must appear that the corporation was doing business within the state in which service was had to such an extent as to warrant the in-

---

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes