### TENNESSEE PUB. CO. v. CARPENTER.
### No. 7821.

Circuit Court of Appeals, Sixth Circuit.
Dec. 7, 1938.

Jordan Stokes, Jr., of Nashville, Tenn. (Jordan Stokes, Jr., of Nashville, Tenn., on the brief), for appellant.

Cecil Sims, of Nashville, Tenn. (Harley G. Fowler, of Knoxville, Tenn., Cecil Sims, of Nashville, Tenn., Fowler & Fowler, of Knoxville, Tenn., and Bass, Berry & Sims, of Nashville, Tenn., on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

Appeal from a decree confirming sale of appellant's properties, from an order striking from the files appellant's amended answer and counterclaim, and from an order denying petition for rehearing.

Appellee filed a creditor's bill on March 3, 1933, as receiver of a national bank which held certain overdue notes and bonds as collateral therefor, secured by a mortgage held by named trustees on the physical property of appellant. On the same day the District Court appointed a receiver ex parte to administer appellant's assets. Appellant answered on May 8, 1933, and on June 3, 1933, the court approved the bill as a general creditor's bill, and ordered the standing master to report the names of all of appellant's creditors, whether they had liens, and the amounts respectively due to each. In 1935 appellant filed a petition under § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, seeking corporate reorganization, which the District Court dismissed. That decision was affirmed by this court in Tennessee Publishing Co. v. American National Bank, 6 Cir., 81 F.2d 463, and by the Supreme Court 299 U.S. 18, 57 S.Ct. 85, 81 L.Ed. 13.

The District Court on May 20, 1935, granted appellee's petition filed the same day to amend the original bill, making the trustees of the mortgage indenture parties defendant. No actual service was secured under this amendment. The trustees on January 13, 1937, waived service of process and answered, alleging that they had no assets nor property of appellant in their hands as trustees, and prayed that any decree entered discharge their obligations.

The District Court on March 20, 1936, ordered that appellant's assets be sold on June 1, 1936. The sale was later postponed until January 7, 1937, subsequent to the decision of the Supreme Court in the reorganization proceeding. On January 6, 1937, appellant filed a motion to vacate the receivership and set aside the order of sale, and amended the motion on the day of sale to object to the failure of appellee to have the trustees made parties

defendant on filing of the original bill. This motion was overruled on January 7, 1937, and two days later the receiver filed his report of the sale. Two unsecured creditors, who later withdrew from the proceeding, excepted to the receiver's report of the sale, but appellee did not except thereto. On January 30, 1937, appellant filed an application that the District Judge be recused, and proceed no further in the case. On motion of appellee this application and accompanying affidavits were stricken from the record on March 5, 1937.

Appellant raises many objections to the confirmation of sale and to various proceedings prior thereto, between March 3, 1933, and March 10, 1937. The most important are the following:

(1) That the court's order appointing a receiver ex parte was void because the bill did not set forth a cause of action justifying such relief.

(2) That appellee is a simple contract creditor, and therefore not entitled to receivership.

(3) That the proceedings are void because of the failure to join indispensable parties, namely, the trustees under the indenture. ·

(4) That the District Court erred in finding appellant insolvent upon the admissions in its answer without the taking of testimony.

Upon the point that the bill did not contain sufficient allegations to justify the that the bill alleged in substance that apreceiver's appointment ex parte, we note that its physical assets were approximately pellant owed approximately $1,500,000, and $337,000; that for several years appellant had operated at the following net losses:

| | |
|---|---|
| 1929 | $ 18,779.79 |
| 1930 | 125,977.00 |
| 1931 | 133,900.34 |
| 1932 | 83,750.82 |

that appellant's current gross income was less than its operating expenses; that appellant was unable to pay salaries and wages, and that its checks issued for payment of wages had been returned unpaid because of insufficient funds; that it was highly probable that appellant would discontinue the publication of its newspapers, because of financial inability to secure news print, for which it was compelled to pay cash, thereby destroying the good will, losing its subscriptions, and forfeiting its Associated Press franchise, valued by appellant in its statements to appellee at $500,000, and that all of these assets depend absolutely upon the daily issuance of its newspapers, and that in the event appellant should cease publication of its daily editions even temporarily, the value of its assets would be greatly diminished and perhaps totally lost; that city and county taxes were past due and unpaid, and the Secretary of State had already issued a distress warrant for unpaid capital stock taxes of appellant; that appellant's managing officers had been convicted of a crime under the banking laws, forcing them to abandon appellant's business, so that the corporation was drifting in hopeless financial condition; that because of its great financial stress appellant had permitted its machinery, equipment and presses to get out of repair; that according to appellant's post office statements, required by federal law, appellant had lost approximately 16,000 subscriptions during the past two years; that appellant on May 1, 1933, would be required to pay $22,500 of coupons maturing on its bonds, and that within the next twelve months appellant would be required to deposit with the trustees under the indenture .an additional sum of $100,000, as a sinking fund, both of which payments would be impossible, and that the failure to pay taxes was a default under the conditions of the indenture.

The bill further alleges that because of the facts set forth there was immediate and urgent necessity for receivership to prevent irreparable injury, and prays that the receiver be empowered immediately to take possession of all of the properties of appellant, with full power to use, operate, manage and control the same and continue the business. It alleges that if notice to appellant is required before the appointment of a receiver, the object and purpose of the bill would be greatly endangered as the delay would result in continued wasting of the assets and would prevent the raising of immediate operating funds imperatively required by the existing emergency, and might result in the discontinuance of all activity on the part of appellant, thereby destroying the good will. The bill was properly verified.

 It is of course the general rule that appointments of receivers are not made ex parte and without notice. "The remedy in

732

such circumstances is not to be granted loosely, but is to be watched with jealous eyes." Shapiro v. Wilgus, 287 U.S. 348, 356, 53 S.Ct. 142, 145, 77 L.Ed. 355, 85 A.L.R. 128. The receivership must be justified by the existence of actual emergency. But federal courts of equity have jurisdiction to make such appointments upon proper showing. Lively v. Picton, 6 Cir., 218 F. 401; Interstate Refineries, Inc., v. Barry, 8 Cir., 7 F.2d 548. The appointment of a receiver without notice is entirely a matter of judicial discretion. Taylor v. Easton, 8 Cir., 180 F. 363, 367. We can not say that the District Court abused its discretion in making the appointment, in view of the emergencies described in the bill.

As to the question whether appellee was a simple contract creditor and that the court therefore had no jurisdiction to appoint a receiver, the record completely disposes of appellant's contention. The bill averred that the bonds held by appellee as collateral for appellant's debt to appellee of some $107,000, were secured by an indenture under which appellee had a lien upon the property and assets of the appellant. The property was specifically described, and the prayer of the bill was for a sale of the assets, taking into consideration the rights of secured creditors under the indenture.

As a general rule, simple contract creditors whose claims have not been reduced to judgment and who have no express lien on the debtor's property have no standing in a federal court of equity to seize the property of the debtor and apply it to payment of their debts. Hollins v. Brierfield Coal & Iron Co., 150 U.S. 371, 14 S.Ct. 127, 37 L.Ed. 1113. Appellant in its answer did not deny the allegation that appellee was a lien creditor, stating that "Respondent neither admits nor denies the allegations of Section 5 of paragraph V of the petition" (pertaining to the existence of a lien in favor of appellee), "but states that said Trust indenture will show such properties as was conveyed." Since the averment that appellee was a lien creditor was not denied, under Equity Rule 30, 28 U.S.C.A. following section 723, it was deemed confessed. The standing master, after numerous hearings in which the indenture was considered, determined that appellee and other bondholders had secured claims, and that they "from the uncontradicted proof not only have a secured claim in the

respective amounts, together with interest as referred to above, but that said claims are secured by a pro rata interest evidenced by the amount of bonds held by each of said claimants, in and to the property, owned by or held for the benefit of the Tennessee Publishing Co. * * * that said deed of trust constitutes a valid lien or mortgage upon the property of the Tennessee Publishing Co."

It does not appear that any exceptions were filed by appellant to the report of the master, nor that any exception upon this subject was ever taken. It does not appear that exceptions of any kind were filed within twenty days, and therefore the report stood confirmed in accordance with Equity Rule 66, 28 U.S.C.A. following section 723. Cf. Roosevelt v. Missouri State Life Ins. Co., 8 Cir., 70 F.2d 939; General Fire Extinguisher Co. v. Equitable Trust Co., 6 Cir., 17 F.2d 968. Apart from the failure of appellant to preserve its record upon this question, appellee was a lien creditor. Hoover v. Mortgage Co. for America, 9 Cir., 290 F. 891, 895. As such he might bring a creditor's bill without having shown that he had exhausted his remedies at law. Case v. Beauregard, 101 U.S. 688, 691, 25 L.Ed. 1004. Cf. Hatch v. Morosco Holding Co., Inc., 2 Cir., 50 F.2d 138. He therefore might properly apply for the appointment of a receiver to prevent waste prior to actual default. Lively v. Picton, supra.

Appellant also contends that the trustees under the indenture were indispensable parties so that no valid order of sale could be entered unless they were joined prior thereto. It is true that the original bill did not join the trustees. They made no appearance until January 13, 1937, just prior to the confirmation of sale. Appellant's contention ignores the character of the bill. It did not pray for foreclosure, but prayed for sale of the debtor's assets as in a general creditor's bill. The petition closely resembled that filed in Lively v. Picton, supra, 218 F. 407, in which the court said:

"The petition must be considered as a whole. So considered, the proceeding was not a mere suit at law by a creditor to collect a debt, nor was it merely an application for a naked receivership; it was essentially an equitable proceeding for the combined purpose of impounding the corporate assets within the jurisdiction of the court and applying those assets, as a trust

fund, to the payment of obligations to petitioner, as well as to others similarly situated."

Appellant was in possession of the properties, and the court took physical custody thereof. All of the bondholders intervened individually and filed and proved their claims. The only interest or possible claim of the trustees, who prior to the bringing of the suit had declined to take action, was that they were representatives of the bondholders and held title for the purpose of satisfying the bonded indebtedness from the property subject to the indenture. No relief was sought against the trustees, and as all bondholders were in court in propria persona, it was unnecessary for the trustees to intervene, for they had no rights except those which were actually asserted by the bondholders. They were proper, but not indispensable parties. Cf. Ratliff v. Nowery, 102 Fla. 1072, 136 So. 895; Addyston Pipe & Steel Co. v. Chicago, 170 Ill. 580, 48 N.E. 967, 44 L.R.A. 405; Bowman v. Breyfogle, 145 Ky. 443, 140 S.W. 694, Ann.Cas.1914B, 938; McColgan v. Magee, 172 Cal. 182, 155 P. 995, Ann.Cas.1917D, 1050; Tompkins v. Levy, 87 Ala. 263, 6 So. 346, 13 Am.St.Rep. 31; Halpin v. Savannah River Electric Co., 4 Cir., 41 F.2d 329, 330.

Since the suit was not one in foreclosure, it is unnecessary to determine the effect of certain decisions in foreclosure actions which are cited as controlling. Cf. Lieberman, Loveman & Cohn v. Knight, 153 Tenn. 268, 283 S.W. 450; Metropolitan Life Ins. Co. v. Moore, 167 Tenn. 620, 72 S.W.2d 1050; Fidelity Bond & Mortgage Co. v. Grand Lodge, I. O. O. F. of Tenn., 6 Cir., 41 F.2d 326; Shipp v. Williams, 6 Cir., 62 F. 4; First National Bank of Chattanooga v. Radford Trust Co., 6 Cir., 80 F. 569.

■ Also the trustees entered a general appearance and disclaimed any and all interest in the proceedings prior to the confirmation of sale. The fact that the trustees were not parties could only affect the question whether the court could give good title to the purchaser. Since the purchaser was satisfied and paid much more than the appraisal price for the properties, appellant has no standing to complain. Cf. Zimmern v. United States, 5 Cir., 87 F.2d 179, 180. Appellant raised the question of defect of parties for the first time on the day of sale, having at no time prior thereto taken the objection by motion or by answer, and therefore waived the objection. Under Equity Rules 19 and 44, 28 U.S.C.A. following section 723, the District Court properly exercised its discretion in permitting the trustees to appear after the sale and before the confirmation. Lewis v. Darling, 16 How. 1, 57 U.S. 1, 14 L.Ed. 819; Radio Corporation of America v. Emerson, 2 Cir., 296 F. 51; America Land Co. v. City of Keene, 1 Cir., 41 F.2d 484; Johnston v. Ouachita National Bank, 8 Cir., 40 F.2d 604.

■ Appellant further contends that its answer constituted a legal denial of insolvency and made an issue requiring proof, and that the District Court erred in sustaining the bill as a general creditor's bill without a hearing and the introduction of evidence upon the question of insolvency. The answer stated that appellant's "books and records are in the possession of the receiver in this cause and that it can not know the truth of the allegation contained in Paragraph VI [pertaining to insolvency of appellant], but it calls for strict proof thereof." The District Court sustained the bill for the reason that "the original bill alleges that the defendant is insolvent, and that the answer fails to deny said allegation of insolvency, and it is therefore admitted by the defendant."

If this holding is correct, the District Court ruled rightly on the question of insolvency.

Appellant does not now state that it was not insolvent at the time the court made this entry, nor did its answer then filed deny the operative facts alleged in the bill. The bill, in addition to its allegations of the admitted bond indebtedness of $750,000, and the aggregate liability of $1,500,000, averred that appellant had furnished appellee with statements that the unsecured debts were about $677,000, and that it had physical assets of approximately $337,000. The answer did not deny these specific allegations, but merely stated that it did not know the truth of them because of the fact that the receiver had appellant's books. But appellant did not need the books to know whether it had furnished such statements nor to understand its general financial situation at the time the bill was filed. Under Equity Rule 30, 28 U.S.C.A. following section 723, the statement in the answer was not a denial of the facts well pleaded in the bill. An adjudication of insolvency must inevitably follow the failure to deny these facts. In

734

the reorganization proceedings instituted in 1935, appellant set forth in its own pleadings that it was hopelessly insolvent, and this court and the Supreme Court adjudged it insolvent in that case. Tennessee Publishing Co. v. American National Bank, supra.

We conclude that the District Court did not err in its ruling on the question of insolvency.

■ Appellant next contends that the District Court erred in striking its amended answer and counterclaim filed on January 30 ,1937, without leave of court. This purported to be an answer to the original bill as amended May 20, 1935. The amendment had merely joined the trustees under the indenture as parties defendant and had not changed any other material allegations of the bill. Appellant had filed an answer to the original bill on May 8, 1933. The amended answer and cross-bill contained much immaterial matter, and was filed after the property had been sold. The District Court did not abuse its discretion in striking this pleading from the files.

■ Appellant finally urges that the court erred in denying its application for rehearing, which raised the question whether appellant through its counsel had consented to the order of sale, as theretofore found by the court. It is admitted that attorneys for appellant in the 77B case, signed a letter in triplicate which amounted to an agreed stipulation in the instant case, and delivered it to the District Court, stating that "All parties in interest have today approved a decree ordering the properties of Tennessee Publishing Company sold at public auction on June 1, 1936," but providing for postponement of the sale in case the Supreme Court granted the petition for certiorari in the 77B case.

The attorneys later, in a written statement, said that their connection with the receivership case was merely incidental to their work in the 77B case, and made other statements contradictory to the letter above quoted. But they do not state that they had no authority to agree to the order of sale. Appellant availed itself of the services of these attorneys in the instant case. Appellant's president was present in court when from time to time these attorneys appeared in the instant case. The order of sale was described in a newspaper belonging to appellant's president.

He was informed at all times of the action of the attorneys, and did not repudiate their connection with the instant proceeding until after the Supreme Court held adversely to appellant in the 77B case. The finding of fact made by the District Court upon this question was supported by ample evidence, and it will not be disturbed. The petition for rehearing was addressed to the sound discretion of the court, and there is no showing of abuse in the order denying the petition. Escanaba Traction Co. v. Burns, 6 Cir., 257 F. 898; Bailey v. Crump, 4 Cir., 41 F.2d 733, 734.

■ An application to recuse, supported by affidavit, filed on January 30, 1937, after the sale was made, was dismissed by the District Court. It is unnecessary to consider the application in detail. The material facts alleged had been known to the affiant some thirty days before the filing of the application. During the time that appellant had knowledge of all these facts it was frequently in court invoking affirmative action in its behalf, and not until it learned that the court was about to confirm the sale was the application filed. It is totally lacking in allegations of fact which evidence personal prejudice or bias on the part of the District Judge, and it was not filed within the time required by the statute, Title 28, § 25, U.S.C., 28 U.S.C.A. § 25, which requires that every such affidavit shall be filed not less than ten days before the beginning of the term of court, or that good cause be shown for the failure to file it within such time. No attempt was made to justify the delay, and we conclude that the District Court was correct in sustaining the motion to strike the application and supporting affidavits.

■ Appellant claims that the bidding was chilled by the failure of the court to join the trustees as parties before the sale, and for other reasons unnecessary to set forth. Since the purchaser paid twice the upset figure for the property covered by the indenture, and more than the upset price for the balance of the property, and almost three times the appraisal figure, this contention has no weight.

It would be futile further to cumber the books with rulings upon all of the technical questions which have been raised by appellant and considered by us in this case.

The decree is affirmed.